**John COSTELLO et al., Plaintiffs,**

v.

**ATLAS CORPORATION et al., Defendants.**

**No. 44027.**

United States District Court N. D. California.

Oct. 31, 1967.

---

Lowenthal, Lowenthal, Weinberg & Jacobson, San Francisco, Cal., for plaintiffs.

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants.

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, TO DISMISS OR TO STAY PROCEEDINGS.

PECKHAM, District Judge.

Plaintiffs England and Costello, the trustees in bankruptcy of Transocean Corporation. of California (hereafter TCC) and Transocean Air Lines (hereafter TAL), respectively, filed this action for 42 million dollars against Atlas Corporation (hereafter Atlas) and other defendants on July 28, 1965. The Complaint seeks damages and certain equitable relief for fraud, duress, breach of fiduciary obligations and for fraudulent conveyances. The Complaint charges in substance that Atlas fraudulently induced TCC to enter a financing transaction with Atlas in 1957 and subsequently became responsible for the financial failure of TCC and TAL by reason of fraud, duress and the control over TCC which it allegedly exercised as a creditor of TCC. Specifically, the first cause of action sounds in fraud, duress and constructive trust. The second cause of action incorporates all but one of the allegations of the first, realleging substantially in *haec verba* the omitted allega-

tion in seeking punitive damages. The allegation is added that Atlas and unidentified and unnamed coconspirators "conspired" to do all the acts which the first cause of action alleges Atlas committed. The third cause of action incorporates all of the allegations of the first, and adds the allegation that on August 28, 1959, the closing date of an agreement entered into between Atlas and TCC on November 20, 1958, the stock of TCC's subsidiaries was conveyed to Atlas or defendant International Aircraft Services, Inc., (hereafter IAS) without fair consideration, and with actual intent to hinder or defraud creditors.

Having removed this action on diversity grounds, Atlas then moved in this Court for summary judgment, to dismiss the action under F.R.Civ.P. 12(b) (6), or to stay the proceedings pending a determination by the Civil Aeronautics Board. The motion was made on the grounds that Atlas is entitled to judgment as a matter of law, in that the Complaint fails to state a claim on which relief can be granted, the action is barred by the statute of limitations, by waiver, estoppel and laches, and by the final order of the Civil Aeronautics Board. The motion is supported by memoranda of points and authorities, an affidavit of one Hamilton K. Smith, a former vice president of Atlas; a certified copy of a complaint filed in another action; a certified copy of the record in Civil Aeronautics Board Docket No. 8943, Transocean-Atlas case; and by plaintiffs' sworn interrogatory answers and verified complaint. As these matters have not been excluded by the Court, the motion has been treated as one for summary judgment. Fed.R.Civ. P. 12(b).

 The Court is of the opinion that this action is barred by the three-year statute of limitations contained in Section 338(4) of the California Code of Civil Procedure. Regardless of where the cause of action arises, California Courts apply the California statute of limitations. Biewend v. Biewend, 17 Cal.2d 108, 109 P.2d 701, 132 A.L.R.

1264 (1941). Accordingly, this Court must apply California's limitation statute to this action. McMillen v. Douglas Aircraft Co., 90 F.Supp. 670 (S.D.Cal. 1950).

Both parties argue that the first cause of action sounds in fraud, duress, or constructive trust. The applicable statute of limitations is Section 338(4) of the California Code of Civil Procedure which requires an action to be brought within three years of the time the cause of action accrues. Galusha v. Fraser, 178 Cal. 653, 656, 174 P. 311 (1918), (fraud); Leeper v. Beltrami, 53 Cal.2d 195, 207, 208, 1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803 (1959), (duress); Agair, Inc. v. Shaeffer, 232 Cal. App.2d 513, 517, 42 Cal.Rptr. 883 (1965), (constructive trust); Day v. Greene, 59 Cal.2d 404, 411, 29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802 (1963); Bainbridge v. Stoner, 16 Cal.2d 423, 429, 430, 431, 106 P.2d 423 (1940).

 The acts complained of here are alleged to have occurred not later than January, 1960, the time of the last overt act alleged in the complaint (Comp., p. 22, l. 7–13). However, Section 338(4) provides that the cause of action is not deemed to have accrued until the discovery by the "aggrieved party" of the facts constituting the fraud or giving rise to the cause of action. In order to toll the normal running of the statute under this provision, plaintiffs are required to allege and prove, among other things, (1) that the acts complained of were done under "such circumstances that [they] would not be presumed to have any knowledge of them,—as that they were done in secret, or were kept concealed; and [they] must also show the times and the circumstances under which the facts constituting the fraud were brought to [their] knowledge". Lady Washington Consol. Co. v. Wood, 113 Cal. 482, 486, 45 P. 809, 810 (1896).

In this case, there is no allegation that plaintiffs, their predecessors, or creditors of the bankrupt did not discover the facts complained of at or about the time they are alleged to have oc-

curred. Nor is there any allegation of ignorance, of concealment, of the facts and circumstances of discovery, or of the absence of the means of knowledge. Further, plaintiffs have not produced *facts*, by way of affidavit or otherwise showing where or how the matters complained of were discovered by TCC or the creditors. Nor have plaintiffs presented any *facts* which would indicate that the plaintiffs, their predecessor bankrupts, or the creditors of the bankrupts did not "discover" the facts of the alleged wrongful acts at or about the time they are alleged to have been committed. The affidavit of John Thorpe, counsel for plaintiff trustee, Costello, states only that Thorpe did not discover certain minutes of meetings of the board of directors of TCC and other documents until December, 1962. This fact is irrelevant to the issue of when and how TCC, TAL, the trustees, or the creditors—the "aggrieved parties" within Section 338(4)—discovered the alleged wrongful acts.

 Moreover, it does not appear that plaintiffs *could* allege or prove that there was any delayed discovery of the alleged wrongful acts by the plaintiffs or their predecessors. A corporation is deemed to have discovered the fact constituting a fraudulent act at the time its independent directors discovered them.. Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222 (1920). Here, the undisputed facts as taken from plaintiff's answers to defendants' interrogatories establish that at all material times, TCC and TAL operated under independent boards of directors and officers, that Atlas was never even represented on either board, and that the boards acted properly and in good faith. Moreover, plaintiffs' interrogatory answers affirm the fact that the Atlas-TCC arguments were negotiated at arm's length, and were ratified or approved by TCC's directors and shareholders. Finally, plaintiffs' answer to defendants' interrogatory answer No. 57 admits that plaintiffs "do not know what each officer and director * * * knew as to

each of the numerous matters covered. Obviously, they were aware of certain matters, such as the execution of agreements between Atlas and TCC, but plaintiffs cannot say what each such person knew of or about each such matter." In short, plaintiff's interrogatory answers establish the existence at all material times of an entirely independent board of directors of TCC and TAL, and the absence of any facts indicating that TCC's and TAL's directors did not have knowledge of all the material facts at or about the time the wrongful acts are alleged to have occurred. In the *Wood* case, *supra*, it was stated, "if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts". (113 Cal. 482, at 486, 45 P. 809, at 810 (1896). On the facts presented, this Court finds that the acts complained of were done under such circumstances that the plaintiff's predecessors are assumed to have knowledge of them and that the statute was not tolled.

The second cause of action repeats the allegations of the first, and only adds a conspiracy allegation. That allegation does not alter the nature of the underlying cause of action, as alleged in the first cause of action, and hence does not affect the running of the statute. The second cause of action is therefore time barred for the same reasons as is the first cause of action. Agnew v. Parks, 172 Cal.App.2d 756, 765, 343 P.2d 118 (1959).

 The third cause of action is based upon an alleged fraudulent conveyance of TCC's subsidiaries by TCC to Atlas and is governed by the three-year limitation in Section 338(4) of the California Code of Civil Procedure.

 The transfers which are alleged to be fraudulent had been made prior to January, 1960. If these were fraudulent conveyances, the creditor's cause of action accrued at that time; and the

plaintiffs stand in the shoes of the creditors as to this cause of action. Again there are no allegations of ignorance, of concealment, of the circumstances of discovery or of the absence of means of knowledge which would toll the running of the statute. On the contrary, it appears that the transfers and the related transactions were widely publicized, as indicated by plaintiffs' verified interrogatory answer 3(d), (i), submitted in another case, which is attached by way of an affidavit of defendants' counsel to defendants' reply memorandum in this action: "Plaintiffs believe that virtually all Transocean creditors, with any substantial amount owed to them by Transocean (i. e., in excess of $500), gained knowledge of the Atlas news story and were affected in their relations with Transocean." This fact of publicity is given further credence through plaintiffs' allegation in a complaint filed in another action that Pan American caused newspapers to print exaggerated accounts of TCC's and TAL's financial problems which in fact caused a "creditor's run" against TAL in September, 1959. See Exhibit B, attached to defendants' motion for summary judgment, p. 16, para. 60. It is also given credence because of the public proceedings before the Civil Aeronautics Board leading to the approval by that agency of the agreement reached November 20, 1958. In light of these undisputed facts, and in the absence of any allegations or facts necessary to toll the running of the statute, this third cause of action is also barred. Richardson v. Michel, 45 Cal.App.2d 188, 195, 196, 113 P.2d 916 (1941).

To avoid the bar of the statute of limitations, plaintiffs allege that Atlas was absent from the state until it qualified to do business in California in August, 1962; and that consequently the statute did not begin to run until that date, under California Code of Civil Procedure, Section 351. Defendants contend that they had sufficient contacts in this state between 1957 and 1962 so that a California Court would have permitted this action by these plaintiffs to be maintained here and that the statute therefore was not tolled.

Defendants' contention is that at all material times after July 1, 1957, Atlas could have been sued in California. They argue that service of process could have been made under California Corporations Code, Sections 6500–6504, as Atlas was "doing business" in California within the meaning of Section 411 of the California Code of Civil Procedure.

The central issue here is whether defendants directly or indirectly engaged in activities in California sufficient to justify the assumption of jurisdiction over them with respect to the charges made in this action.

Defendants' contentions are based upon the allegations of plaintiffs' complaint, which constitute binding admissions for the purpose of this motion, Taylor v. Navigazione Libera Triestina, 95 F.2d 907, 911 (9th Cir.1938), and by plaintiffs' interrogatory answers, which may be considered by this Court in ruling on the present motion. Champlin v. Oklahoma Furniture Mfg. Co., 269 F.2d 918, 74 A.L.R.2d 978 (10th Cir.1959).

■ First, the complaint alleges that from at least July 1, 1957, Atlas dominated and controlled the Babb Company, Inc. ("Babb"), its wholly owned subsidiary, to its advantage and to the disadvantage of TCC and Babb. As established by the certificate of the California Secretary of State, Babb qualified to do business in California in 1946 and remained qualified until December 18, 1959, at which time its successor International Aircraft Services, Inc. ("IAS") qualified and remained qualified thereafter until at least August 14, 1962, when Atlas qualified in California. The manipulation of the affairs of a local subsidiary corporation by a foreign parent to the detriment of persons in California dealing with the subsidiary subjects the parent to service of process in a cause of action arising out of that manipulation. Empire Steel Corp. v. Supe-

rior Court, 56 Cal.2d 823, 831, 17 Cal. Rptr. 150, 366 P.2d 502 (1961).

██ Secondly, the complaint alleges that TCC and TAL are California corporations with their principal office and place of business in California (paras. V and VI), that beginning July 1, 1957, Atlas assumed "control and direction of the activities and operations of TCC, TAL and the other subsidiaries" (p. 12, l. 26–28), that said control and direction continued to and beyond August 28, 1959 (p. 13, l. 1–3; p. 19, l. 6–18, that Atlas exercised its powers under the pledge agreement of July 1, 1957, to the disadvantage of these companies (p. 14, l. 15–p. 12 l. 15, that Atlas forced these companies to do things contrary to their best interest (p. 15, l. 21–30; p. 16, l. 23–29; p. 19, l. 29–31; p. 20, l. 21; p. 21, l. 21–24), that Atlas "mismanaged the affairs of the corporation" (p. 15, l. 31–p. 16, l. 2), and that as a result of Atlas' misconduct damage was caused to TCC, TAL and to other firms and persons in this state. (pp. 23–26.) Even if all of Atlas' alleged activities technically occurred outside of California, their alleged consequences within California would be sufficient to sustain jurisdiction over Atlas in connection with plaintiffs' action. Empire Steel Corp. v. Superior Court, *supra*, at p. 833, 17 Cal. Rptr. 150, 366 P.2d 502.

Finally, the affidavit of Hamilton K. Smith, a vice president of Atlas, which is attached to defendants' motion, and plaintiffs' answers to defendants' interrogatories numbered 22, 23, 24 and 49 establish certain undisputed facts which further prove that Atlas was at all material times subject to jurisdiction in California with respect to the harm alleged in plaintiffs' complaint. In summary, these facts are as follows: From at least July 1, 1957, until at least December, 1959, Ray O. Ryan was a full-time employee of Atlas; at various times during that period he was a vice president of Atlas; and during 1957, he was president of Babb. Throughout this period Ryan lived in La Jolla, California, and transacted business at his home and at an office located in Beverly Hills, California. During this period Ryan represented Atlas in most of its dealings and communications with TCC and its subsidiaries, and regularly and frequently communicated by letter, telephone and personal contact with their managements. Representatives of TCC and TAL met with Ryan at his home and at his office regarding the business affairs of TCC and TAL and the relationships arising out of various agreements entered into by Atlas, Babb, and TCC.

██ During the same period, Atlas' president, Floyd Odlum, maintained and from time to time occupied a ranch at Indio, California. Some of the negotiations leading up to the July 1, 1957 agreement, which plaintiffs allege is fraudulent, occurred at the Indio ranch. (Plaintiffs' answer to defendants' interrogatory number 24). Finally, it must be noted that the claims asserted in this action arise out of Atlas' alleged activities which occurred in connection with its financing of TCC and the related course of dealing between Atlas and TCC. This Court is of the opinion that these "contacts" between Atlas and the California corporations which are plaintiffs' predecessors are sufficient to have rendered Atlas amenable to the jurisdiction of the California courts. When the cause of action sued upon relates to activities of the defendant in California and plaintiff alleges damage to himself and others located here arising out of these activities, the requisite "minimum contacts" are established. Empire Steel Corp. v. Superior Court, *supra*.

Plaintiffs do not dispute the facts but rather attempt to distinguish defendants' supporting authorities. However, this Court is of the opinion that the totality of defendants' California activities in connection with the transactions complained of was sufficient to justify the assumption of jurisdiction over them with respect to the charges made in this action.

██ Nor is this Court of the opinion that the statute of limitations was

tolled by any provision in the Bankruptcy Acts. Section 11(e) of the Bankruptcy Act, 11 U.S.C. Section 29(e), permits a trustee to bring an action within two years after adjudication of bankruptcy if the claim upon which he sues was not time-barred "at the time of the filing of the petition in bankruptcy." TCC's petition was filed July 18, 1963, more than three years after the last date, January, 1960, upon which any of its claims could have accrued. Therefore, its claims were barred when the petition was filed and 11 U.S.C. Section 29(e) does not revive them. Austrian v. Williams, 198 F.2d 697 (2d Cir.1952) cert. denied 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952).

 Assuming *arguendo* that TAL had any claims, an involuntary petition in bankruptcy was filed against TAL on June 23, 1960. Also, on April 3, 1961, a petition for arrangement under Chapter 11, 11 U.S.C. § 721, of the Bankruptcy Law was filed by TAL. On October 16, 1962, TAL was adjudicated a bankrupt. A petition to review the order of adjudication was taken by the bankrupt, but no order was made staying the enforcement of the order of adjudication or of the appointment of plaintiff Costello as trustee. The petition to review was later withdrawn on April 23, 1964.

The filing of the involuntary petition against TAL suspended the statute on claims not then barred so as to permit the trustee to file an action "within two years subsequent to the date of adjudication." 11 U.S.C. § 29(e). The trustee's time to file would be therefore limited to two years from October 16, 1962, were it not for other provisions of the Bankruptcy Act discussed below. As this action was not filed until July 28, 1965, it was not timely.

 Plaintiffs argue, however, that the filing of a petition to review stayed the effect of the Referee's Order and suspended the operation of 11 U.S.C. § 29(e). However, the mere filing of a petition to review an order of a Referee in bankruptcy in no way serves to stay its effect or operation. Coulter v. Blieden, 104 F.2d 29 (8th Cir.1939), cert. denied 308 U.S. 583, 60 S.Ct. 106, 84 L. Ed. 488 (1939); In the Matter of Stratford Financial Corporation, 264 F.Supp. 917 (S.D.N.Y.1967).

 Plaintiffs further argue that the filing of a petition for Arrangement by TAL under Chapter 11, 11 U.S.C. § 721, suspended the running of the two-year period under 11 U.S.C. § 29(e), until the petition was withdrawn in April, 1964. However, 11 U.S.C. § 702 states that for purposes of applying Chapters I through VII of the Bankruptcy Acts, which chapters include 11 U.S.C. § 29(e), *"the date of adjudication shall be taken to be the date of the filing of the petition under sections 721 or 722 of this title except where an adjudication had previously been entered."* (Emphasis added.) Furthermore, 11 U. S.C. § 725 says, "A petition filed under section 721 of this title shall not act as a stay of adjudication or. of the administration of the estate * * * ". Hence, for the purposes of 11 U.S.C. § 29(e), the two-year period began running on the date the petition for Arrangement was filed, April 4, 1961, rather than on the date of adjudication of the involuntary petition, · October 16, 1962, and whatever claims then existing were barred two years later. That this date starts the running of the two-year period rather than the date of adjudication, October 16, 1962, is confirmed by Henkin v. Rockower Bros., Inc., 259 F.Supp. 202 (S.D.N.Y.1966). Hence, TAL's claims, if any, must be held to have been barred prior to the date of filing, July 28, 1965, of the instant complaint. Finally, this Court finds plaintiffs' arguments unpersuasive that the statute was tolled by Atlas' filing of claims against TCC and TAL in bankruptcy, purportedly relying on the rules governing counterclaims. In re Tele King Corporation, 136 F.Supp. 731 (S.D.N.Y.1955).

 Finally, even if the action had been timely filed, a careful examination of the complaint and the papers and oral

argument presented in respect to the motion under consideration convince the Court that the plaintiffs have failed to state a claim for relief, that there are no triable issues of fact, and that the defendants are entitled to judgment as a matter of law.

For the reasons enumerated above, this Court holds that there is no genuine issue of material fact, and that defendants are entitled to judgment as a matter of law, on the ground that the statute of limitations bars plaintiffs' cause of action and that plaintiffs have failed to a claim for relief. This disposition makes it unnecessary to consider the other grounds presented by defendants in their motions.

It is so ordered.