**UNITED STATES of America,**
**Plaintiff,**

v.

**FRANKLIN NATIONAL BANK,**
**Defendant.**

**No. 72 C 859.**

United States District Court,
E. D. New York.

Oct. 19, 1973.

Henry Brachtl, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, Chief Judge.

Defendant-third party plaintiff, Franklin National Bank (Franklin), moves for summary judgment on the grounds that the plaintiff's claim is "founded upon a tort" and is therefore barred by the three year statute of limi-

tations contained in 28 U.S.C. § 2415(b).[1]

Prior to June 27, 1966, Technical Capital Corporation (TCC), borrowed the sum of $300,000.00 from the Small Business Administration pursuant to 15 U.S.C. § 661 et seq. and issued a debenture in that amount. The United States then acquired title to the debenture. On June 27, 1966, third-party defendant, Benjamin Abramson (Abramson), borrowed $300,000.00 from Franklin and used the proceeds of the loan to purchase all the outstanding stock of TCC.

On June 28, 1966, the sum of $477,000.00 was deposited to the account of TCC at the Franklin. On the same date, a check in the amount of $300,000.-00 was drawn against the funds deposited. The check was signed by Abramson as an officer of TCC and made to the order of Abramson. The endorsement on the back of the check contained the legend, "Re: Purchase of certificate of deposit # 7821, $300,000.00 to mature December 7, 1966, C/D 23–7821."

█ The complaint alleges that Franklin wrongfully applied TCC funds in issuing a certificate of deposit to Abramson, that Abramson thereafter used the certificate of deposit to pay the personal indebtedness of $300,000.00, and that Franklin wrongfully accepted and applied the certificate of deposit in payment of Abramson's obligation. Franklin admits that the certificate of deposit was used to pay Abramson's personal indebtedness. It denies that TCC funds were wrongfully applied (Answer ¶ 7). For the purpose of this motion the court assumes the truth of plaintiff's allegations.

Plaintiff obtained judgment in the sum of $307,041.61 against TCC in the United States District Court for the Southern District of New York on July 17, 1967. The plaintiff then commenced this action against Franklin seeking a judgment "requiring defendant to pay to plaintiff the funds wrongfully received from Technical Capital Corporation or so much as is sufficient to satisfy the indebtedness of Technical Capital Corporation to the plaintiff. . . ." (Complaint ¶ 10).

The complaint in the instant action was filed on June 26, 1972. Both parties agree that, for statute of limitations purposes, the cause of action accrued on July 18, 1966, the effective date of 28 U.S.C. § 2415.[2] The defendant contends that the action is "founded upon a tort" and hence is barred by the three year limitation period imposed by § 2415(b). In response, the plaintiff urges that the action, if controlled by § 2415 at all, is founded upon an implied contract within the meaning of § 2415(a),[3] and that the six year limitation period contained therein has not run.

█ The answer to the question posed by the defendant's motion for summary judgment lies in a determination of the nature of the claim. If the claim is tortious, the claim is barred; if founded upon implied contract, it is not. Plaintiff urges and defendant does not contest the applicability of New York law.[4]

---

1. 28 U.S.C. § 2415(b) states in pertinent part:

   [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues.

2. 28 U.S.C. § 2415(g) provides that:

   Any right of action subject to the provisions of this section which accrued prior to the date of enactment of this Act shall, for purposes of this section, be deemed to have accrued on the date of enactment of this Act.

3. 28 U.S.C. § 2415(a) states in pertinent part:

   [E]very action for money damages brought by the United States . . . which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.

4. Federal law is generally applicable in suits brought by the United States. Clearfield Trust Co. v. United States, 318 U.S. 363, 63

The New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, which adopts verbatim the Uniform Fraudulent Conveyance Act, does not confer upon the creditor a right of action in tort against the grantee. Section 278 of Article 10 provides that:

§ 278. Rights of creditors whose claims have matured

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser.

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

The leading New York case dealing with the extent of a defrauded creditor's rights is Hearn 45 St. Corp. v. Jano, 283 N.Y. 139, 27 N.E.2d 814 (1940), cited and relied upon by the government. There, the New York Court of Appeals, when faced with a complaint very similar to that before us in the instant case, held that the gravamen of the complaint was an action in equity to set aside the fraudulent conveyance.[5] The fact that the complaint alleged actual intent on the part of the debtor to evade the creditor did not transform the complaint into an action to recover on the ground of actual fraud. Surely, the court stated

the action is not one for actual fraud where a complete cause of action may be stated by a showing of the bare facts of a voluntary conveyance resulting in insolvency. Such a conveyance is but one of the two kinds which are deemed fraudulent by the operation of the statute. Both kinds are simply acts which are voidable at the behest of the creditor as a result of the statutory declaration. Whichever pattern the debtor may choose, the relief sought by the creditor is the same; to undo the transfer of title so as to bring within the ambit of execution those assets upon which the creditor is rightly entitled to levy. The fraud, such as it is, is only incidental to the right of the creditor to follow the assets of the debtor and obtain satisfaction of the debt. The gravamen of the cause of action in the case at bar is the ordinary right of a creditor to receive payment; this right has been implemented by the protection of legislation concerning the circumstances under which the creditor may avail himself of assets which the debtor has transferred to others. No deceptive or fraudulent act of the individual defendants, no wrongful co-operation of theirs in the acts by which the judgment debtor's property was transferred, lends weight to the plaintiff's cause of action. The plaintiff's right is complete without reference to the quality or character of the acts of the individual defendants. The gravamen

---

S.Ct. 573, 87 L.Ed. 838 (1943). However, in the absence of federal law, state law not inconsistent with federal policy may be applied. 1A Moore, Federal Practice, ¶ 0.321 (2d ed. 1965). Moore states that:

> If the state in which the federal court is sitting has a statute such as the Uniform Fraudulent Conveyance Act, governing fraudulent conveyances, the federal court will, under the Rules of Decision Act in cases involving non-federal matters, apply the substantive law as declared by the state court.

3A Moore, Federal Practice, § 18.11 at 2071, n. 3 (2d ed. 1970).

5. The complaint in *Hearn* charged that the debtor had made a voluntary conveyance which operated to render the debtor insolvent. Section 273 of the N.Y. Debtor and Creditor Law provides that:

> [E]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

of the action is the right of the creditor to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which *apparently* contradict that right.

*See also* Duell v. Brewer, 92 F.2d 59 (2d Cir. 1937) (Dictum from Learned Hand: "courts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors. . . . The reasons ordinarily given are the impossibility of proving any damages, which scarcely seems sufficient; but the result is settled, at least for us.")

■ Applying the reasoning of *Hearn* to the case before us, it would appear that the mere existence in the complaint of allegations of "wrongful conduct" by the grantee does not convert the action from one based upon the right of a creditor to set aside a fraudulent conveyance to one based upon a tort.

The Government's complaint alleges that TCC was indebted to the Government and that the application of TCC's funds to satisfy Abramson's personal indebtedness was "in fraud of TCC's creditor, the United States of America." (Complaint ¶ 8). The prayer for relief demands "an order requiring defendant to pay to plaintiff the funds wrongfully received from Technical Capital Corp., or so much as is sufficient to satisfy the indebtedness of Technical Capital Corp. to plaintiff." Although, as the defendant's memorandum points out, these allegations do not strictly follow the suggested form (Form 13) for a fraudulent conveyance complaint, appended to the

Federal Rules of Civil Procedure, they nevertheless clearly indicate that the action is one to set aside the fraudulent conveyance as provided in New York Creditor and Debtor Law, Article 10, § 278(1)(a). The allegations of wrongful conduct by the grantee (Franklin), do not transform the action into a tort claim, but rather are necessary to establish that the grantee is not "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase" within the meaning of § 278.[6]

■ The second line of authority suggesting that there is no cause of action in tort against the grantee of a fraudulent conveyance is simply the general law of fraud and deceit.[7] The so-called "textbook elements" of a fraud action include (1) the false representation of a material fact; (2) knowledge or belief of its falsity; (3) belief in the truth of the representation by the person to whom it is made; (4) intent that the person to whom the false representation is made rely on such representation; and (5) actual reliance. *See, e. g.,* 5 Wright and Miller, Federal Practice and Procedure, Civil § 1297 (1969). To warrant relief against a person on the basis of fraud, it must appear that the fraud was committed "either by the person sought to be charged, or by his procurement, or with his authority." 24 N.Y.Jur., Fraud and Deceit, § 208 (1962). In the instant case, the complained of fraud apparently consisted of Abramson's use of TCC's assets to repay a personal debt owed to Franklin. While it may be that Franklin engaged in a scheme to defraud the Government by inducing Abramson to repay its out-

---

6. The grantee's good faith and lack of knowledge of the fraud would presumably defeat the creditor's right to set aside the transfer under § 278.

7. In 1 Glenn, Fraudulent Conveyances and Preferences, § 72 at 123 (rev. ed. 1940) the right to a creditor against a transferee is described as follows:

[T]he notion that an action lies in tort is so discredited, that one may venture upon a generality. It may safely be said, then,

that there is no tort cause of action, when a transfer is made before the creditor obtains judgment; . . . . The reason why there is no tort cause of action for a fraudulent transfer that takes place before the creditor obtains judgment or attaches is that a general creditor has no property interest in his debtor's assets, and so the result of the transfer is the loss of a mere possibility of realization which is too speculative to be measured in damages.

standing loan with TCC funds, there is no suggestion or allegation in the complaint that Franklin engaged in such a course of conduct.[8] It is certain that the Government's case does not depend on proving the elements of common law fraud. In view of F.R.Civ.P. 9(b) requiring particularity in pleading the circumstances of fraud, see 5 Wright and Miller, Federal Practice and Procedure, Civil § 1297 (1969), I conclude that the complaint cannot be construed as stating a tort claim in fraud, but rather must be construed as stating an equitable claim to set aside a fraudulent conveyance.

Franklin argues that even if the action is construed as an equitable claim to set aside a fraudulent conveyance, nevertheless the court should treat the claim as an action in fraud for statute of limitations purposes. In the absence of a specific statute of limitations governing fraudulent conveyances, most jurisdictions apply the fraud statute of limitations to fraudulent conveyance actions.[9] See 128 A.L.R. 1289 (1940) and cases cited therein. Although conceding that the United States is not bound by state statutes of limitations,[10] the defendant argues that the federal statute of limitations (28 U.S.C. § 2415) should be construed in light of this majority rule. The purpose of § 2415 as indicated by the legislative history, 2 U.S.Code Cong. and Admin.News 2502, 89th Cong. 2d Sess. (1966), is to place the Government as far as is possible in the same position as private litigants, to terminate stale claims, and to end the inequities which had resulted from Government immunity from time limitations. In imposing a three year limitation period in tort actions and a six year limitation period in contract actions, Franklin contends, Congress consciously adopted the statutes of limitations in effect in most jurisdictions so as to achieve some degree of uniformity and equity. Thus, Franklin concludes, to further the above-stated Congressional purposes, § 2415 should be interpreted in a manner consistent with the majority rule treating actions to set aside a fraudulent conveyance as actions in fraud.

The short answer is that while it may be true that most jurisdictions treat a fraudulent conveyance action as a fraud action for statute of limitations purposes, these jurisdictions generally have a special statute of limitations for fraud actions which is separate and apart from the tort statute of limitations.[11] Thus, it cannot be said that the majority of jurisdictions apply the general tort statute of limitations, such as that contained in § 2415, to fraudulent conveyance actions. It is apparent that any attempt to use state law as authority for a particular construction of § 2415 is of doubtful validity. We must, therefore, turn to the precise language of § 2415(b).

■■ The three year statute of limitations contained in § 2415 applies to all actions "founded upon a tort." Although there is almost no case law construing this section, what little authority there is makes it clear that in

---

8. There is also no allegation of conspiracy, nor could there be. Under New York law, a conspiracy claim is available only to a creditor who had a lien or a judgment at the time of the conveyance. See 8 N.Y.Jur., Conspiracy, § 14 (1959).

9. The New York rule is apparently the minority position. In Hearn 45 St. Corp. v. Jano, 283 N.Y. 139, 27 N.E.2d 814 (1940), the New York Court of Appeals applied the equitable statute of limitations to a fraudulent conveyance action, not the fraud statute of limitations.

10. See United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) and 1A Moore, Federal Practice, ¶ 0.321 (2d ed. 1965).

11. See, e. g., Barr v. Petzhold, 77 Ariz. 399, 273 P.2d 161 (1954), citing Ariz.Code Ann. § 29.203 (1939); Costello v. Atlas Corp., 297 F.Supp. 19, 22 (N.D.Cal.1967), citing Cal.Code Civ.Pro. § 338(4) (West 1964); Crescent v. White, 88 Nev. 71, 493 P.2d 1323 (1973), citing Nev.Rev.Stat. § 11.-190(3)(d) (1957); New Amsterdam Cas. Co. v. Waller, 301 F.2d 839, 841 (4th Cir. 1962), citing N.C.Gen.Stat. § 1–52(9) (1945).

applying the statute we must look beyond the face of the complaint to the underlying nature of the action. *See* Forrester v. United States, 308 F.Supp. 1157 (W.D.Penn.1970); United States v. Gera, 279 F.Supp. 731 (W.D.Penn. 1968), rev'd, 409 F.2d 117 (3d Cir. 1969). The defendants argue that the nature of the substantive right involved in this action is the right to recover damages sustained as a result of another's wrongful act. In Hearn 45 St. Corp. v. Jano, 285 N.Y. 139, 27 N.E.2d 814 (1940), however, the New York Court of Appeals found that the right underlying an action pursuant to the N. Y. Debtor and Creditor Law is the right of a creditor to receive payment due to him:

> The gravamen of the cause of action in the case at bar is the ordinary right of a creditor to receive payment; this right has been implemented by the protection of legislation concerning the circumstances under which the creditor may avail himself of assets which the debtor has transferred to others.

283 N.Y. at 141, 27 N.E.2d at 816. *See also* 37 Am.Jur.2d, Fraudulent Conveyances, § 1 (1968). ("The principle underlying the law of fraudulent conveyances is that the creditor has a claim upon the property of the debtor, consisting of a fraud from which the debt should be paid, and that the debtor may not ignore the right or equity of his creditors.") Thus, the right upon which an action to set aside a fraudulent conveyance is based is not the right to recover damages sustained from the wrongful action of the grantee, but rather the right of the creditor to protect and preserve his interest in the debtor's property. This right would appear to be founded in equity, not in tort.

■ I conclude, therefore, that the three year statute of limitations contained in § 2415(b) should not be applied to the instant action. Since it is well settled that the United States is not subject to state statutes of limitations or the doctrine of laches,[12] the only remaining limitations period which could be imposed is the six year period applied to contract actions under § 2415(a). Even if, however, the instant action were construed as an action in quasi-contract within the meaning of § 2415(a),[13] the action was timely commenced.[14] Thus, the defendant's motion for summary judgment should be denied and it is

So ordered.

12. *See* note 10 *supra.*

13. *See* Plaintiff's Memorandum pp. 9, 10; I Glenn, Fraudulent Conveyances and Preferences, §§ 56, 239 (rev. ed. 1940).

14. The statute of limitations began to run no later than June 27, 1966, the date of the alleged fraudulent conveyance. This action was commenced on June 26, 1972.