UNITED STATES of America, Plaintiff,

v.

Bernard GELB; Judith Gelb; EDP Medical Computer Systems, Inc.; and 143–11 Realty Corp., Defendants.

No. 90–CV–1543 (TCP).

United States District Court,
E.D. New York.

Dec. 24, 1991.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Mary F. Dooley, Kiyo A. Matsumoto, Asst. U.S. Attys., of counsel), Brooklyn, N.Y., for plaintiff.

Paul A. Batista, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants have moved on various grounds for summary judgment. For the reasons stated below, defendants' motion is denied in its entirety.

## BACKGROUND

This civil action stems from a criminal case [1] brought against defendants Bernard Gelb and EDP Medical Computer Systems, Inc. ("EDP"). A grand jury returned a superseding indictment on July 16, 1987, naming as defendants Bernard Gelb and EDP. The central charge was that Bernard Gelb had violated the Racketeer Influenced and Corrupt Organizations Act by conducting (through EDP) a pattern of racketeering activity from about 1975 to about 1985; to wit: falsification of postage.

After a jury trial, the defendant Bernard Gelb ("Gelb") was convicted of one count of violating RICO, 18 U.S.C. §§ 1962(c) and 1963; one count of mail fraud, 18 U.S.C. § 1341; 50 counts of bribery, 18 U.S.C. § 201(b)(1)(C); and three counts of signing false corporate income tax returns, 26 U.S.C. § 7206(1). Defendant EDP was acquitted on all charges. A judgment of conviction was entered on January 13, 1989, in the amount of $5,101,000. This amount consists of a $101,000 fine and $5,000,000 in restitution.[2]

To date defendants' fine and restitution remain largely unpaid. In an attempt to secure assets from which the restitution and fine imposed on Gelb might be satisfied, the government, on May 5, 1990, filed the complaint against which the present motion is directed. The complaint seeks to set aside two conveyances of real estate. The first involves a residential home located at 65-48 Alderton Street, Rego Park, New York. On or about January 25, 1978, defendants Bernard Gelb and Judith Gelb as grantors conveyed all their interest in this property to Judith Gelb, as grantee. This conveyance was recorded on August 3, 1978. An examination of the deed, however, reveals that this conveyance was defective in that the metes and bounds description is inaccurate. *See* Batista Aff't, Ex. C (copy of deed). It was not until eight and one-half years later, on November 10, 1986, that a "correction deed," with an accurate description of the Rego Park property, was delivered and recorded conveying the property from Bernard and Judith Gelb as grantors to Judith Gelb as grantee. *See id.* at Ex. E (copy of deed).

The second conveyance involves commercial real estate located at 143-11 Archer Avenue in Jamaica, New York. On October 29, 1986, defendant EDP transferred its interest in the 143-11 Archer Avenue property to defendant 143-11 Realty Corp. The government contends that at the time of this transfer, defendant EDP was con-

---

1. Judge Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation in the Eastern District of New York, presided over the underlying criminal case.

2. In March, 1990, defendant filed a post-conviction motion seeking to reduce his sentence. De-

fendant appealed the denial of that motion to the Second Circuit. The Second Circuit affirmed in part, and vacated and remanded in part. *United States v. Gelb*, 944 F.2d 52 (2d Cir.1991). On December 3, 1991, before Judge Van Sickle in the District of North Dakota, defendant Bernard Gelb again moved for a reduction of his sentence.

trolled by defendant Bernard Gelb.[3] According to the government's papers, the Defendant 143–11 Realty Corp., the transferee, is owned by "defendant Judith Gelb and/or defendant Bernard Gelb." Plaintiff's Mem. in Opp. to Def's Mot. to Dismiss at 5.

Plaintiff's complaint is based on a judgment of conviction for a fine and restitution and alleges that the conveyance of the home in Rego Park and the 1986 conveyance of the commercial property in Jamaica were (i) made at a time when the defendant knew that he was indebted to the United States, specifically the United States Postal Service; (ii) made and accepted without any valuable consideration; and (iii) made with the intent to delay and defraud the plaintiff in its attempts to secure the collection of the indebtedness incurred by the defendant. Plaintiff's complaint seeks an order from this Court setting aside the two real estate conveyances and restraining all four defendants from any further disposition of property and assets belonging to the defendant Bernard Gelb.

## DISCUSSION

### A. *Introduction*

Defendants originally filed a motion seeking to dismiss the complaint. However, that motion was subsequently converted to a motion for summary judgment in an open court proceeding on January 25, 1991. *See* Batista Reply Aff't, Ex. A at 9–11. Accordingly, the Court's opinion is based on a full range of submissions, including memorandums of law, affirmations (and attached exhibits), declarations and portions of trial transcript.

■ A motion for summary judgment may be granted only where the moving party demonstrates that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The duty of a court confronted with such a motion is limited to determining whether the case presents one or more issues of fact which require a trial for resolution; it may not properly resolve those issues itself based upon the affidavits and other evidence before it. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In the course of this analysis, the Court must draw all inferences and resolve all ambiguities in favor of the non-moving party. *See American Int'l Group v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). Nevertheless, summary judgment should not be denied where the only disputed issues are either frivolous or immaterial and would only create further purposeless proceedings for the Court. *See United States v. Matheson,* 532 F.2d 809, 813 (2d Cir. 1976).

■ Before examining defendant's arguments in favor of summary judgment, the Court must examine the potential applicability of the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001–3308, to this action. The Federal Debt Collection Procedures Act ("FDCPA") was enacted by Chapter XXXVI of the Crime Control Act of 1990. The effective date of the Act is May 29, 1991; over one year after the complaint was filed in this action.

However, section 3631(b)(1) of the FDCPA provides that "[t]he amendments made by title I of this Act *shall apply with respect to actions pending on the effective date of this Act* in any court on (A) a claim for a debt; or (B) a judgment for a debt." Crime Control Act of 1990, Pub.L. No. 101–647, § 3631(b)(1), 104 Stat. 4789, 4966 (1990) (emphasis added). As used in this section, "title I" refers to Subtitle A of Chapter XXXVI of the Crime Control Act of 1990. *See* Note at 28 U.S.C. § 3001 (Supp.1991).[4] The complaint in this action

---

3. Defendants claim that Bernard Gelb relinquished any and all ownership interest he may have had in EDP in January, 1978. *See* Kaplan Aff't (Sept. 24, 1990).

4. Apparently "title I" is a remnant from H.R. 5640, the House bill that was enacted as the

FDCPA. For whatever reason, when the bill was incorporated into the Crime Control Act of 1990, Congress failed to change this phrase to conform with the headings adopted therein. It is clear, however, that title I in the bill is equivalent to Subtitle A of the Act.

was filed on May 5, 1990 and thus the action was pending on May 29, 1991. Moreover, in 28 U.S.C. § 3002(3)(B), "debt" is defined as "an amount owing to the United States on account of a ... fine, assessment, penalty, restitution [or] forfeiture." 28 U.S.C. § 3002(3)(B) (Supp.1991). The government's present action seeks to set aside two real estate conveyances in an ultimate attempt to satisfy the debt owed by defendant Bernard Gelb by virtue of the imposition of fines and restitution in the underlying criminal case. Although the action is limited to determining the question of title, and further steps would be required to execute on the government's judgment, the Court finds that the present action is a "claim for a debt," or an action for "a judgment for a debt," as those terms are used in section 3631(b)(1). It would appear, therefore, that by operation of section 3631(b)(1), Subtitle A of the FDCPA— now codified at 28 U.S.C. §§ 3001–3308— applies to this action.

This conclusion is supported by the legislative history. House Report No. 101–736 provides a background of H.R. 5640, the bill that eventually was enacted as the FDCPA. *See* H.R.Rep. No. 101–736, 101st Cong.2d Sess., *reprinted in* 1990 U.S.Code Cong. & Admin.News 6630 [Hereinafter House Report]. The House Report notes initially that the purpose of the FDCPA "is to create a comprehensive statutory framework for the collection of debts owed to the United States government." *Id.* at 6631. On the issue of the application of the Act, the report indicates:

> [I]n making the transition to a uniform Federal statutory scheme from the current patchwork of State laws governing collection procedures, the [House Judiciary] Committee made the policy decision that in addition to new claims arising after enactment, the Act should also apply to all pending claims....

*Id.* at 6632. Further, in the section-by-section analysis, the report states that "chapter 176 [28 U.S.C. §§ 3001–3308] shall govern any action pending in any court on [the effective date of the FDCPA] on a claim by the United States for a debt owed

to the United States, or on a judgment for such a debt." *Id.* at 6643.

■ The government argues that the FDCPA, or at least the fraudulent conveyance provisions of Subchapter D, 28 U.S.C. §§ 3301–3308, should not apply to this action. The government contends that Subchapter D creates a substantive federal law of fraudulent transfers. The "ordinary rules of construction of a substantive change in the law," the government argues, "require that the change apply prospectively and prohibit a retrospective operation unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" Plaintiff's Supplemental Mem. in Opp. to Def's Mot. to Dismiss the Compl. and for Summ. J. at 10 (quoting *Union Pac. R.R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913)). From this the government concludes: "[t]hus, the substantive fraudulent transfer provisions of the FDCPA will apply only to transfers made on or after the date the [FDCPA] became effective, May 29, 1991." *Id.*

As the government points out, a statute will have retroactive application where such is "the unequivocal and inflexible import of [its] terms, and the manifest intention of the legislature." *Union Pac. R.R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). Section 3631(b)(1) provides just such an unequivocal message. In addition, this retroactive application is clearly discussed and explained in the legislative history. The Court finds the government's attempt to carve an exception to this retroactive effect for subchapter D unpersuasive. Therefore, pursuant to section 3631(b)(1) and the manifest intent of Congress, the Court finds that the FDCPA applies to the present action.

With this threshold issue decided, the Court now turns its attention to the defendant's motion for summary judgment. Defendants have raised seven grounds for relief, each of which is discussed below.

### B. *Prior Dismissal of the Forfeiture Claim*

The defendant's first ground for relief is that the plaintiff is precluded from pursu-

ing its present civil action because the plaintiff abandoned its forfeiture claim in the underlying criminal case. Defendants' argument is based on "principles of contract law, claim preclusion and fundamental fairness." Def's Mem. in Supp. of Mot. to Dismiss at 8.

The record clearly indicates that the government abandoned its forfeiture claim against defendants Gelb and EDP in the criminal case. The government entered into a stipulation with defendant Gelb, so ordered by Judge Van Sickle on October 19, 1988, stating that "the United States of America did, on October 17, 1988, withdraw its claim for forfeiture of assets pursuant to 18 U.S.C. Sec. 1963 or otherwise." *Id.*, Ex. L.

The government does not contest that it entered into this stipulation, *see* Plaintiff's Mem. in Opp. to Mot. for Summ. J. at 5, but rather asserts that the present action is not an action for forfeiture. The government submits that the penalties of fine, restitution and forfeiture are distinct, and note that monies derived from these means are placed in different accounts established by federal law. The government further argues that claim preclusion is not applicable here because (i) this action involves a claim for a fine and restitution, not forfeiture, and (ii) even if the present civil action were a claim for a forfeiture, a final judgment was never reached with respect to the forfeiture claim in the prior criminal case.

■ Defendants' first claim for relief presents a complex issue to the Court: whether, in a civil action brought subsequent to a criminal proceeding for the purpose of securing assets to be used in satisfaction of criminal fines and restitution, the government is bound—either under contractual principles or the doctrines of preclusion—by a stipulation made in the prior criminal action. After reviewing the briefs submitted by the parties and having undertaken its own research, the Court has found little, if any, guidance on this question.

■ As a general matter, the government is bound by stipulations and agreements it makes in the course of a criminal proceeding. *See United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir.1991).[5] The *Liranzo* Court made clear that in a specific case, an agreement is "interpreted according to principles of contract law." *Id.* Viewing the question as a matter of contract law, the issue of whether the government is bound by its prior stipulation becomes one of contract interpretation. As a general matter, "[a] contract must be interpreted to give effect to the intent of the parties." *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1025 (2d Cir.1991). If the language of the contract is unambiguous, then the parties' intent is discerned from the four corners of the contract itself. *See Nicholas Laboratories, Ltd. v. Almay, Inc.,* 900 F.2d 19, 21 (2d Cir.1990) (per curiam).

In this case, the stipulation signed by the government states that "the United States of America did, on October 17, 1988, withdraw its claim for forfeiture of assets pursuant to 18 U.S.C. Sec. 1963 or otherwise." Batista Aff't, Ex. L at ¶ 3. This language, specifically the phrase "or otherwise," is at best arguably subject to two interpretations. First, as the defendants contend, the words "or otherwise" may be read to modify and affect the government's claim on the assets themselves. That is, in addition to withdrawing its claim for forfeiture of the assets, the government withdrew its claim on the assets by virtue of any and all other legal means. *See* Def's Mem. in Supp. of Mot. to Dismiss at 8. This is not, however, what the stipulation says.

The second and more reasonable interpretation, urged by the government, is that the phrase "or otherwise" merely modifies the specific forfeiture provisions through which the government might seek *forfeiture* of the assets. *See* Plaintiff's Mem. in Opp. to Def's Mot. for Summ. J. at 6. The government, in an affidavit by Assistant U.S. Attorney Gordon Mehler, explained

---

**5.** In *Liranzo,* the issue was whether the United States had breached a "proffer agreement." The Court stated that "[p]re-trial agreements, such as cooperation agreements and proffer agreements, are interpreted according to principles of contract law." *Liranzo,* 944 F.2d at 77.

that it abandoned its forfeiture claim because they learned that the properties in question were so encumbered that the government would have incurred a net loss had they pursued the forfeiture claim. In agreeing to drop the forfeiture claim, Mehler states, "the government did not waive, nor did it ever intend to waive, any other claims the government had against Bernard Gelb, EDP or the real properties." Mehler Aff't at ¶ 5.

■ The Court believes that the government's version reflects the actual intent of the parties in signing the stipulation. In any case, to the extent the stipulation is arguably ambiguous, the government, as the non-moving party, is entitled to have such ambiguity resolved in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990). Defendants point to a variety of extrinsic evidence that they submit is sufficient to resolve the issue of intent on the present motion. *See* Reply Aff't of Norman Kaplan (May 5, 1991) at ¶ 8 and Ex. A. The Court acknowledges this evidence but finds it insufficient to support a summary judgment on this issue. The question of the parties' intention in entering the stipulation is at best an open question of fact which, if necessary, may be left for the jury to decide.

■ A further question arises concerning defendants' contractual argument; namely, whether the present action is a "forfeiture" and thus controlled by the terms of the stipulation. If the present action is a "forfeiture," then the issue of the parties intent would not be material because no matter how the stipulation is read, the government would be contractually bound. Forfeiture is "[a] comprehensive term which means a divestiture of specific property without compensation; it imposes a loss by the taking away of some preexisting valid right without compensation." Black's Law Dictionary 650 (6th ed. 1990). A criminal forfeiture operates *in personam* against a defendant in a criminal action and serves as a penalty upon conviction. A civil forfeiture operates *in rem* against a

particular property itself on the theory that the property is guilty of wrongdoing. *See* Note, *The Innocent Owner Defense to Real Property Forfeiture Under the Comprehensive Crime Control Act of 1984*, 58 Fordham L.Rev. 471 (1989). A forfeiture under RICO, 18 U.S.C. § 1963, is "a punitive, not a restitutive measure." *United States v. Lizza Indus.*, 775 F.2d 492, 498 (2d Cir.1985).

The present action is not a "forfeiture" under any of these guises. Although related to the underlying criminal action, there is no criminal defendant in the present action and thus it can not be a criminal forfeiture. Likewise, the properties central to the present action are not listed as defendants and thus we do not have a civil forfeiture. Finally, although the indictment in the underlying criminal case contained a RICO count, no relief under the RICO statute is sought in the present action. The present action is a civil action brought by the United States as plaintiff seeking to set aside two real estate conveyances as fraudulent under New York law and represents the first step in the process whereby the government seeks to execute on its prior judgment for fines and restitution. Accordingly, were the jury to agree with the government's version of the stipulation, there would be no contractual bar to the present action.

On the assumption that the present claim is for a forfeiture of assets, the defendants next argue that the stipulation bars the present action on the basis of claim preclusion. In opposition, the government argues claim preclusion, or *res judicata*, is not available here because its claim is based on a judgment for a fine and restitution and not forfeiture and that, in any event, a final judgment was not entered on the issue of forfeiture. As we have just noted above, the present action is not based on forfeiture and thus the stipulation—assuming it is limited to forfeiture actions—would have no preclusive effect.

■ Nevertheless, even assuming the defendants' premise, and making no assumptions with respect to the scope of the stipulation, the preclusion doctrines are no

bar to the government's present action. "The doctrine of *res judicata*, or claim preclusion, bars a losing party from re-litigating a cause of action in which a judgment on the merits has been rendered in a previous action between the same parties or their privies." *Connelly Containers, Inc. v. Bernard*, 717 F.Supp. 202, 205 (S.D.N.Y.1989). "The related doctrine of collateral estoppel, or issue preclusion, bars 'the relitigation of an issue of law or fact that was raised, litigated and actually decided by a prior judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment.'" *Id.* at 206 (quoting *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983)). In this case, the issue of forfeiture was not raised, litigated and actually decided in the prior criminal case; rather the parties entered into a stipulation whereby the government withdrew its forfeiture claim. And while the Second Circuit has held that certain stipulations can have preclusive effect with respect to future litigation, it has limited that holding to stipulations dismissing the entire action with prejudice. *See Samuels v. Northern Telecom, Inc.*, 942 F.2d 834 (2d Cir.1991); *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986); *Connelly Containers, Inc. v. Bernard*, 717 F.Supp. 202, 205–06 (S.D.N.Y. 1989). The stipulation in this case is by no means as comprehensive. Therefore, the Court finds that in any event the stipulation has no preclusive effect with regard to the present action.

### C. *Statute of Limitations*

#### 1. FDCPA Analysis

As noted above, the Federal Debt Collection Procedures Act of 1990 ("FDCPA") applies to this action. The debt for which the government seeks satisfaction arose in this case on January 13, 1989 upon the entry of the judgment of conviction. Thus, to set aside the allegedly fraudulent conveyances under the FDCPA, the government would proceed pursuant to 28 U.S.C. § 3304(b)(1)(A) which provides in relevant part, "a transfer made ... by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made ... if the debtor makes the transfer (A) with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A) (Supp. 1991). The statute of limitations applicable to this provision is section 3306(b)(1), which provides "[a] claim for relief with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought (1) under section 3304(b)(1)(A) within 6 years after the transfer was made ... or if later, within two years after the transfer ... was or could reasonably have been discovered by the claimant." 28 U.S.C. § 3306 (Supp.1991). The FDCPA has no tolling provision similar to that in 28 U.S.C. § 2416(c).

The 1978 transfer of the Rego Park property was ineffective for present purposes because the deed inaccurately described the property to be conveyed. The effective date of the completed conveyance was November 10, 1986, the date that the corrective deed was delivered or recorded. The alleged fraudulent act, *i.e.*, the attempt by defendant Gelb to perfect what he believed to be an ineffective prior transfer, is sufficient in this Court's view to trigger the applicable provisions of the FDCPA. Thus, the present action is timely with respect to the Rego Park conveyance. The Court notes that the result might have been different had Mrs. Gelb brought an equitable action of reformation to correct the original deed. In reformation, the effect of a decree of reformation is "retrospective and necessarily goes back to the writing of the instrument." N.Y. Jurisprudence, Cancellation and Reformation of Instruments, § 40 at 344 (1981). The delivery and recordation of a "correction deed" does not, however, amount to an action for reformation. Therefore, this rule is inapplicable here.

The transfer of the commercial property in Jamaica, New York was made on October 29, 1986. As to this transfer, the complaint was timely filed under the provisions of the FDCPA. The defendant does not raise a statute of limitations argument as to this transfer. Rather, the de-

fendant argues that it is barred by the doctrine of laches. As noted above, "[i]t is well settled that the United States is not subject to state statutes of limitations *or the doctrine of laches.*" *United States v. Franklin Nat'l Bank,* 376 F.Supp. 378 (E.D.N.Y.1973) (emphasis added) (citing *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)); *see Badaracco v. Commissioner,* 464 U.S. 386, 399 n. 10, 104 S.Ct. 756, 765 n. 10, 78 L.Ed.2d 549 (1984). The defendant cites a recent trend away from this general rule. However, "[w]hile some courts have noted that laches may be applied against the government where it is seeking to vindicate purely private rights, that defense has been held inapplicable where the government agency is acting in the public interest." *Securities Exchange Commission v. Willis,* 777 F.Supp. 1165 (S.D.N.Y.1991). In the present case the government is acting in the public interest, and therefore, laches does not apply.

For the reasons set forth above, the present action is timely under the FDCPA as to both the conveyance of the Rego Park residence and the commercial property in Jamaica. The Court, therefore, may not grant summary judgment on the basis that the action is time barred.

2. Analysis under 28 U.S.C. § 2415

 The Court notes that if the FDCPA does not apply to this action, and if the original conveyance of the Rego Park property were deemed effective, the statute of limitations analysis would be different (although the result would be the same). The applicable statute would be the six-year provision in 28 U.S.C. § 2415(a), *see United States v. Franklin Nat'l Bank,* 376 F.Supp. 378, 384 (E.D.N.Y.1973), and the tolling provisions of 28 U.S.C. § 2416(c) would apply.

Under 28 U.S.C. section 2415(a), the statute of limitations would accrue on January 25, 1978, the date of the original transfer, *see id.* at n. 14, and would run on January 25, 1984. Thus, unless the tolling provisions of 28 U.S.C. § 2416 apply, the government's action with respect to the 1978 transfer is time-barred. Courts interpret-

ing section 2416(c) have "indicated that once officials who could take action recognize the essential elements of the cause of action, the statute is not tolled." *United States, ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 777 F.Supp. 195 (N.D.N.Y.1991) (citing cases). Thus the mere recording of the 1978 deed would be insufficient to defeat the tolling provisions of section 2416(c). The six-year statute would be tolled until such time as the government became aware of the alleged fraudulent aspects of the 1978 transfer.

The indictment in the underlying criminal action against defendants Gelb and EDP was returned on July 16, 1987. Therefore, if we assume that it was upon this date that the United States became aware of the material facts, the government would have until July 16, 1993 in which to file timely its action. Of course, the government would have known, or reasonably could have known, about the material facts surrounding the 1978 conveyance sometime before the indictment date. Given the six-year limitations period, and the filing date of the action (May 5, 1990), the government's case would be timely only if they became "aware" after May 5, 1984. The Court suspects that the government was not aware of the facts surrounding the 1978 transfer prior to May 5, 1984. In any case, this would clearly be an open question of fact not properly resolved at the summary judgment stage.

As the Court has stated above, however, we believe the FDCPA does apply to this action, and the transfer of the Rego Park property was not effective until November 10, 1986, thus the foregoing analysis under sections 2415(a) and 2416(c) is not applicable.

In any event, the government might have persuasively argued that no Congress in a rational frame of mind would have knowingly enacted a law which would extinguish government claims validly pending by making such law retroactively applicable thereto. However, it appears to this Court that Congress, by making the entirety of Chapter 176 applicable to actions pending as of

the effective date of the FDCPA, may have provided for just that irrational result.

The government might also have persuasively argued that under section 28 U.S.C. § 3001(b), "to the extent another Federal law specifies procedures for recovering on a claim or a judgment on a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with [the FDCPA]." While the legislative history indicates that by this section Congress had in mind the Superfund law [6] and did not want to create inconsistent rules therewith, the statute does not expressly so state. Therefore, an argument might have been made that the general federal statute of limitation provisions—28 U.S.C. §§ 2415 and 2416—qualify as "another Federal law" and thus they would apply here, as opposed to the limitations provision set out in section 3306 of the FDCPA. In any event, the result is the same whether or not the FDCPA applies: the present action is timely as to both transfers.

### D. *Rule 9(b)*

▉ Defendant's third ground for summary judgment is that the complaint fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting the fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Conclusory allegations of fraudulent conduct are not sufficient to meet the requirements of Rule 9(b). *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982). Instead, specific acts or statements constituting the fraud must be alleged. *See Ross v. A.H. Robbins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

▉ However, in a motion under Rule 9(b) "it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud." Wright & Miller, Federal Practice and Procedure,

§ 1298, at p. 621. Rather, a court must strike a "balance between the simplicity sought in Rule 8 and the particularity required by Rule 9." *Id.* at 623. An example of this balance "is demonstrated by the illustrative fraud claim set out in Official Form 13, which is expressly declared to be a sufficient pleading by Rule 84." *Id.* at 624. An examination of the complaint reveals that the plaintiff closely followed Form 13 in preparing the complaint. Accordingly, the Court finds that the complaint, as presently drawn, satisfies the requirements of Rule 9(b).

### E. *Rule 19*

▉ Defendant's fourth ground for relief is based on Rule 19 of the Federal Rules of Civil Procedure. Defendant notes that there are at least 23 shareholders of EDP Medical Computer Systems, Inc. None of these, other than Judith, is named as a defendant in the present action. Defendant contends that Rule 19 dismissal is warranted here because the interests of these shareholders may be affected by the outcome of the present action.

The Court finds defendant's argument on this point to be without merit. The shareholders of EDP relinquished their interest in the commercial property in Jamaica when in 1986 the property was conveyed to 143–11 Realty Corp. If any shareholders are necessary to this action, they would be the shareholders of 143–11 Realty Corp., who by this action are liable to lose their interest in the property. However, these shareholders—Bernard and Judith Gelb—are already named as defendants in the suit.

### F. *Rule 4*

Defendant's fifth ground for relief is that a copy of the summons and complaint was not timely served upon the defendant Bernard Gelb as required by Rule 4(j). On the basis of and for the reasons set forth in the Report and Recommendation made by United States Magistrate Judge Michael L. Orenstein dated November 12, 1991, the Court will not grant summary judgment to defendant on this ground.

6. The Comprehensive Environmental Response Compensation and Liability Act of 1980.

**758**

### G. *Stay Pending Appeal*

Defendant's sixth ground for relief requests a stay pending the appeal of the denial of defendant's motion filed in March, 1990 for post-conviction relief.[7] During the pendency of defendant's instant motion, the Second Circuit decided the appeal on his sentencing. *United States v. Gelb*, 944 F.2d 52 (2d Cir.1991). Accordingly, this aspect of defendant's present motion is now moot.

### H. *Recusal*

██ Finally, defendants, and their counsel Paul A. Batista, request that this Court recuse itself from the case and place the litigation for random re-assignment to another Judge. Defendants make this request pursuant to 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Court has carefully considered this aspect of defendant's motion and the same is denied. All that the Court knows about this case or the persons involved herein has been acquired in proceedings properly before it in this and the related criminal case.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is denied in its entirety. The government should amend its complaint, *see* Fed. R.Civ.P. Rule 15(a) and Rule 15(c), to plead both claims under the Federal Debt Collection Procedures Act of 1990 within thirty days of the date of this order.

SO ORDERED.

---

**7.** The Second Circuit has already confirmed defendant Bernard Gelb's appeal of his conviction in the underlying criminal case. *United States v. Gelb*, 881 F.2d 1155 (2d Cir.), *cert. denied*, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989).