**UNITED STATES of America, Appellee,**

v.

**Wilbert BROWN, Jr.,
Defendant-Appellant.**

**No. 1144, Docket 83–1454.**

Certiorari Denied Dec. 10, 1984.
See 105 S.Ct. 599.

United States Court of Appeals,
Second Circuit.

Argued April 24, 1984.
Decided Sept. 7, 1984.

---

Steven M. Schatz, New York City (Gelberg & Abrams, New York City, on the brief), for defendant-appellant.

Martin J. Auerbach, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Paul Schechtman, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before KAUFMAN, MESKILL, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal primarily concerns the issue whether the inclusion in a criminal sentence of a judicial order requiring the defendant to make restitution to the victims of his crimes violates the defendant's Seventh Amendment right to trial by jury. The issue is raised by Wilbert Brown, Jr. on this appeal from a December 16, 1983, judgment of conviction in the District Court for the Southern District of New York (Pierre N. Leval, Judge). Following a jury trial, Brown was found guilty of two counts of fraud arising out of a scheme in which he falsely held himself out to be an attorney, in violation of 18 U.S.C. §§ 1343, 2314 (1982). Appellant first challenges his conviction on the ground that the trial judge improperly refused his request to proceed *pro se*. Appellant then asks that

we vacate that part of his sentence ordering him to pay $20,030 as restitution to the victims of his crimes on the ground that the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579, 3580 (1982) ("the Act" or "VWPA"), is unconstitutional. For reasons that follow, we conclude that the District Judge acted within his discretion in denying appellant *pro se* status and that the VWPA is constitutional.

## Facts

During the pretrial phase of this case, Brown and his court-appointed attorney, John Byrnes of the Legal Aid Society's Federal Defenders Services Unit, disagreed about the conduct of Brown's defense. Brown raised with his lawyer the possibility that he take part in his own representation. Byrnes, perceiving loss of his client's trust, asked to be relieved from further representation of Brown. At a September 7, 1983, pretrial conference, Judge Leval sought to resolve the issue of representation. The District Judge ruled out the possibility of Brown's participating with Byrnes in the conduct of his defense, affording Brown the choice of representation by Byrnes, representation by another appointed attorney, or proceeding *pro se*. After determining that Brown did not wish to have his counsel relieved, Judge Leval denied Byrnes' request to be relieved as counsel. That settled the issue through the remainder of pretrial activity and the first three days of the trial.

After the Government rested its case and the Court denied a motion for acquittal, however, Brown requested that he be granted "dual responsibility with respect to the area of questioning." Judge Leval denied this request on the grounds that Brown did not have a constitutional right to such hybrid representation and that Brown would suffer no prejudice by Byrnes' continued representation. Judge Leval also denied both a renewed request by Byrnes to be relieved and a request by Brown to proceed *pro se*. The District Judge determined that a change of representation so late in the trial would be dis-

ruptive and would prejudice the prosecution and the defense.

At trial the Government established that Brown defrauded at least seven people by falsely holding himself out to be a lawyer. Brown bilked his victims of at least $20,030, primarily fees for "legal" services not rendered at all, much less by a licensed attorney, and non-existent "court costs." Judge Leval sentenced Brown to concurrent sentences of five and seven years' imprisonment. Pursuant to the VWPA, the District Judge also sentenced appellant to pay $20,030 in restitution over a five-year period following his release from incarceration.[1]

### Discussion

 1. Pro Se *Representation.* Judge Leval acted well within his discretion in denying appellant's mid-trial request to proceed *pro se.* Although the Sixth Amendment implies a right of self-representation, *Faretta v. California,* 422 U.S. 806, 818–21, 95 S.Ct. 2525, 2532–33, 45 L.Ed.2d 562 (1975), this right is unqualified only if exercised before the commencement of trial. *Sapienza v. Vincent,* 534 F.2d 1007, 1010 (2d Cir.1976).

> Once the trial has begun with the defendant represented by counsel, ... his right thereafter to discharge his lawyer and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance.

*United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir.1965) (citations omitted), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).[2]

The record reveals no prejudice suffered by the appellant by reason of the denial of his application to conclude the trial on a *pro se* basis. Indeed, when he called the witnesses appellant desired, appellant's counsel corrected the only colorable criticism of his performance. Judge Leval was well aware of the history of appellant's relationship with his counsel and reasonably concluded not only that his representation by counsel was adequate but also that appellant's representation of himself would have been disruptive of the trial process. Under all the circumstances, the District Court's refusal to permit *pro se* representation during the trial will not be disturbed.

2. *Restitution.* We turn next to appellant's constitutional challenges to the restitution order. He contends primarily that the order violated his Seventh Amendment right to a jury trial "[i]n Suits at common law." In support of this claim appellant argues that a restitution order imposed under the VWPA is the equivalent of a civil judgment because it is compensatory, it has *res judicata* effect, and it is enforceable in the same manner as a civil judgment. We hold that these characteristics do not transform a criminal sentence into a civil adjudication requiring fact-finding by a jury.

 As a general matter, there is no constitutional requirement that a jury determine any aspect of a defendant's sentence. *Williams v. New York,* 337 U.S.

1. The evidence presented at trial amply supported Judge Leval's decision to set the amount of restitution at $20,030. As authorized by 18 U.S.C. § 3580(b), the Probation Office prepared a "victim impact statement," which calculated the victims' losses at between $21,244 and $22,244. However, Judge Leval used the figure $20,145, the losses proved at trial, and then subtracted $115, which ended up in the pocket of Brown's confederate. Though he did not challenge the amount at sentencing, Brown claims on appeal that he did not receive all of the $20,030. The point has been waived and, in any event, is without merit. The VWPA authorizes restitution for the "loss ... of property of a

victim," 18 U.S.C. § 3579(b)(1), which is not necessarily the same as the gain to the offender.

2. This standard is much the same as that governing the substitution of one attorney for another during the course of trial. "In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587 (1973).

241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949); *Turnbough v. Wyrick*, 551 F.2d 202, 203 (8th Cir.), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); *Payne v. Nash*, 327 F.2d 197, 200 (8th Cir.1964); *Virginia ex rel. Shifflett v. Cook*, 333 F.Supp. 718, 721 (W.D.Va.1971). The Eighth Amendment circumscribes the outer limits of permissible penalties, *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 3007–10, 77 L.Ed.2d 637 (1983); *Trop v. Dulles*, 356 U.S. 86, 99–103, 78 S.Ct. 590, 597–599, 2 L.Ed.2d 630 (1958), and the Due Process Clause of the Fifth Amendment imposes some limitations on sentencing procedures, *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion); *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed.2d 1690 (1948). But, except as Congress chooses to provide for jury decision-making, *see, e.g.,* Fed.R.Crim.P. 31(e) (authorizing special jury verdict as to extent of interest or property subject to forfeiture),[3] the fact-finding necessary for sentencing is the responsibility of the sentencing judge, save in those rare situations where the degree of the offense, and the consequent maximum penalty, turns on a factual issue requiring jury consideration. *See, e.g., United States v. Sobell*, 314 F.2d 314, 329 & n. 12 (2d Cir.), *cert. denied*, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963); *United States v. Kramer*, 289 F.2d 909, 920–21 (2d Cir.1961); *but see Jackson v. United States*, 221 F.2d 883, 885 (D.C. Cir.1955). The numerous decisions entitling a defendant to an opportunity to contest disputed factual matters relevant to sentencing implicitly and properly assume that, once the jury has determined guilt on a particular offense, the sentencing function may constitutionally be discharged solely by the trial judge. *See, e.g., Mempa v. Rhay*, 389 U.S. 128, 134–35, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967); *United States v. Woody*, 567 F.2d 1353, 1361–62

(5th Cir.), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978); *United States v. Stassi*, 544 F.2d 579, 583–84 (2d Cir.1976), *cert. denied*, 430 U.S. 907, 97 S.Ct. 1177, 51 L.Ed.2d 582 (1977); *Raulerson v. Wainwright*, 508 F.Supp. 381, 384 (M.D.Fla.1980).

■ We reject the premise of defendant's argument that a sentencing provision with characteristics similar to that of a civil judgment is subject to the requirements of a civil adjudication. So long as the restitution provision is a permissible form of punishment, it is not subject to civil requirements simply because it also achieves some of the purposes of a civil judgment. Restitution undoubtedly serves traditional purposes of punishment. The prospect of having to make restitution adds to the deterrent effect of imprisonment and fines, penalties that might seem to some offenders less likely to be imposed than restitution. Restoring the victim's property also serves the legitimate penal purpose of vindicating society's interest in peaceful retribution. Finally, restitution can be a useful step toward rehabilitation, a consequence specifically emphasized by Congress. *See* S.Rep. No. 97–532, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2538 ("Senate Report"). These penal purposes have long been promoted through the imposition of fines payable to the Treasury; their achievement is not lessened because the immediate beneficiary of a restitution order is the crime victim.

In any event, a restitution order differs in significant respects from a civil adjudication. The fundamental and obvious difference, of course, is that restitution occurs only after an adjudication of guilt. Since that adjudication permits a judge to determine the appropriate length of incarceration without infringing a defendant's Sixth Amendment rights, *James v. Twomey*, 466

---

**3.** Rule 31(e) was added to the Federal Rules of Criminal Procedure to implement the forfeiture provisions of the Organized Crime Control Act of 1970, 18 U.S.C. § 1963 (1982), and the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848(a)(2) (1982). *See*

Fed.R.Crim.P. 31 advisory committee note. In the view of the Adivsory Committee, "the amount of the interest or property subject to criminal forfeiture is an element of the offense to be alleged and proved." *Id.*

F.2d 718, 721 (7th Cir.1972), acceptance of appellant's argument would mean that the Seventh Amendment protects a defendant's property more extensively than the Sixth Amendment protects his liberty.

Furthermore, though the VWPA was intended to compensate the victim,[4] it does so in a manner distinct from the normal functioning of a civil adjudication. A court imposing an order of restitution is required to consider the defendant's ability to pay. 18 U.S.C. § 3580(a). The victim may therefore be awarded less than full compensation solely because of the offender's financial circumstances. Furthermore, unlike a civil suit, the victim is not a party to a sentencing hearing and therefore has only a limited ability to influence the outcome. The victim cannot control the presentation of evidence during either the criminal trial or the sentencing hearing and is not even guaranteed the right to testify about the extent of his losses. Neither can he appeal a determination he deems inadequate. *See generally* Note, *Victim Impact Statements and Restitution: Making the Punishment Fit the Victim,* 50 Brooklyn L.Rev. 301, 312–13 (1984).

■ The *res judicata* provision of the Act does not blur the distinction between a criminal sentence and a civil judgment. The VWPA accords *res judicata* effect only to the elements of the offense proved at trial. 18 U.S.C. § 3580(e). This merely codifies existing decisions regarding the *res judicata* effect of criminal convictions, *see, e.g., United States v. Frank,* 494 F.2d 145, 160 (2d Cir.), *cert. denied,* 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974), a result Congress has achieved in other statutes, *e.g., Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951) (Clayton Act). Moreover, a defendant is assured

at his criminal trial the right to jury determination of facts accorded *res judicata* treatment in a later civil action.

■ The fact that a restitution order is enforceable in the same manner as a civil judgment, 18 U.S.C. § 3579(h), does not transform the former into the latter. Section 3579(h) enhances the enforceability of the restitution order; the victim can enforce the order himself, rather than rely on the Government's normal procedures to enforce a sentence. The legislative history confirms that the enforcement provision was enacted to "increase[ ] the victim's chances of collecting restitution," Senate Report at 33, 1982 U.S.Code Cong. & Ad. News at 2539. The enforcement provisions of the VWPA parallel existing law for the collection of fines. *See* 18 U.S.C. § 3565 (a fine "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases").

■ Finally, we note that judicially ordered restitution comports with the common law practice at the time the Seventh Amendment was adopted. Common law judges awarded restitution in larceny cases, thereby sparing victims the need to pursue civil remedies. *See* 4 W. Blackstone, *Commentaries* \* 362–63. Congress has ample power to build on this historic practice and authorize judges to order restitution for the full range of injuries suffered by crime victims. The Seventh Amendment is no barrier to this addition to the arsenal of federal criminal sanctions. *United States v. Florence,* 741 F.2d 1066 (8th Cir.1984); *United States v. Brown,* Crim. No. 83–00372 (E.D.Pa. July 10, 1984); *see* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv.L.Rev. 931 (1984); *contra, United*

---

**4.** One goal of the statute is to require "the wrongdoer ... to the degree possible to restore the victim to his or her prior state of well-being." Senate Report at 30, 1982 U.S.Code Cong. & Ad.News at 2536. The Act prohibits a court from imposing restitution "with respect to a loss for which the victim has received or is to receive compensation," 18 U.S.C. § 3579(e)(1), and provides that an order of restitution "shall be set off

against any amount later recovered as compensatory damages." *Id.* § 3579(e)(2). The Act also requires the sentencing judge to state on the record the reasons for not ordering restitution or for ordering only partial restitution, *id.* § 3579(a)(2), thereby mandating consideration of restitution in every sentencing decision to which the Act applies.

*States v. Welden*, 568 F.Supp. 516 (N.D. Ala.1983).

In addition to the Seventh Amendment challenge, appellant contends that the restitution provisions of the VWPA "do not apply to indigents and could not constitutionally do so." His statutory claim is incorrect. The Act does not prohibit a judge from imposing a restitutionary sentence on a defendant who happens to be indigent at the time of sentencing.[5] Though the trial judge must consider the defendant's "financial resources" and "financial needs," his "earning ability" is also relevant to a restitution order. 18 U.S.C. § 3580(a). Recognizing that indigency may be temporary, Congress provided for payment of restitution during a period of up to five years after the completion of any prison sentence imposed. *Id.* § 3579(f)(2)(B). Because in this case appellant will have up to twelve years from the time of sentencing to complete restitution, the District Court was fully justified in considering the defendant's future earning capacity in setting appellant's restitutionary sentence.

Nor does the fact of current indigency render imposition of a restitution sentence unconstitutional. Financial obligations may be imposed upon a defendant who is indigent at the time of sentencing but subsequently acquires the means to discharge his obligations. *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (recoupment of costs of appointed counsel). Constitutional objections would be encountered only if the restitution order was enforced at a time when the defendant was unable, through no fault of his own, to comply. *See Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (probation revocation for failure to pay fine and restitution). Even then, the defendant's own responsibility for his inability to pay would be rele-

vant to the enforceability of the order. *Id.* 103 S.Ct. at 2070. Judge Leval's order expressly provides that Brown's restitution obligation is contingent on his ability to pay.

Appellant next attacks the constitutionality of the sentence on vagueness grounds. He contends that the restitution order does not adequately apprise him of his obligations. The claim is without merit. Appellant knows that he is required to pay $20,030 over the five-year period following the end of his prison term. He also knows from the terms of the sentence that he need pay this sum only if he is financially able to do so. Moreover, he is assured by section 3579(g) that the Parole Commission must consider his ability to pay when deciding whether to revoke parole for failure to comply with the restitution order. There is no uncertainty as to his obligations.

Finally, appellant claims that the District Court violated the Act by delegating administrative responsibility for supervision of the restitution order to the United States Attorney's office. This claim is premature. Administration of the order will not arise until after appellant's release from prison. By that time it is likely that administrative responsibility will be shifted from the United States Attorney's office, most likely to the Probation Office. If any administrative issues arise, they may be litigated when the order is sought to be enforced.

Ever since 1925, federal law has authorized sentencing judges to order defendants to pay restitution to crime victims as a condition of probation. Act of March 4, 1925, ch. 521, 43 Stat. 1259, 1260 (codified as revised at 18 U.S.C. § 3651 (1982)). The VWPA for the first time authorizes federal judges to impose restitution as a part of the sentence, whether or not probation has

---

**5.** This conclusion is not altered by the observation of Congressman Rodino, Chairman of the House Judiciary Committee, that "restitution may not be possible because the wrongdoer lacks the resources to make it." 128 Cong.Rec. H8202 (daily ed. Sept. 30, 1982). This statement

reflects congressional awareness that victims would not always receive the restitution ordered by courts; there is no suggestion that restitution provisions are inappropriate for defendants who are indigent at the time of sentencing.

been ordered.[6] *See* Senate Report at 30, 1982 U.S.Code Cong. & Ad.News at 2536. The prior practice has long been approved for use by federal sentencing judges. *See, e.g., United States v. Berger,* 145 F.2d 888, 891 (2d Cir.1944), *cert. denied,* 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408 (1945). Today we give unqualified approval to Congress' determination that victim restitution should be added to the sentencing options of federal judges.

The judgment of the District Court is affirmed.

---

6. Prior to the VWPA, the availability of restitution only as a condition of probation limited its use. *See, e.g., United States v. Elkin,* 731 F.2d 1005, 1011 (2d Cir.1984) (restitution invalid in absence of probation). Probation may be imposed only when imposition or execution of a sentence is suspended, or when a sentence of more than six months is imposed and confinement is ordered for a term of less than six months with the balance of the sentence suspended (the so-called "split sentence"), or when a fine is imposed and imposition or execution of imprisonment is suspended. 18 U.S.C. § 3651 (1982).