**UNITED STATES of America, Appellee,**

v.

**Bernard GELB, Defendant–Appellant.**

**No. 527, Docket 90–1396.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1990.

. Decided Aug. 6, 1991.

Gordon Mehler, Brooklyn, N.Y., Asst. U.S. Atty. for the E.D. of N.Y. (Andrew J. Maloney, U.S. Atty., for the E.D. of N.Y., Matthew E. Fishbein, M. Lawrence Noyer, Jr., Asst. U.S. Attys., of counsel), for appellee.

Paul A. Batista, New York City, for defendant-appellant.

Before NEWMAN and PRATT, Circuit Judges, and ROBERT W. SWEET, District Judge for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Defendant Bernard Gelb appeals from an order and an amended judgment entered in the United States District Court for the Eastern District of New York, Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation. The order denied his motion under Fed.R.Crim.P. 32 and 35 and 28 U.S.C. § 2255 for various forms of postconviction relief; the amended judgment sought to correct certain errors in the original judgment of conviction.

Gelb was charged in a 78–count superseding indictment with defrauding the United States Postal Service and related offenses. Through his company, EDP Medical Computer Systems, Inc. ("EDP"), Gelb engaged in a scheme to avoid paying postage on mass mailings. He bribed postal officials to ensure that his fraud went undetected. He also subscribed to corporate tax returns that falsely claimed as tax deductions postage for which he never paid.

After a month-long jury trial, Gelb was convicted on one count of racketeering (18 U.S.C. § 1962(c)), one count of mail fraud (18 U.S.C. § 1341), 44 counts of bribery (18 U.S.C. § 201(b)(1)(C)), and three counts of

filing false corporate tax returns (26 U.S.C. § 7206(1)). The jury acquitted Gelb of some of the other counts; the rest were dismissed.

On January 13, 1989, Judge Van Sickle sentenced Gelb as follows: on the racketeering count, 13 years and a $25,000 fine; on the mail fraud count, 5 years and a $1,000 fine; on six of the bribery counts, 13 years each to run concurrently; on each of the other 38 bribery counts, 5 years probation; on one of the tax counts, 5 years and a $75,000 fine; and on each of the other two tax counts, 5 years probation. The 5-year sentences for mail fraud and for tax fraud were to run consecutively to each other, although concurrently with the 13-year sentences for racketeering and bribery, which were to run concurrently with each other. In addition, Gelb was ordered, pursuant to 18 U.S.C. § 3663, to pay restitution to the United States Postal Service in the amount of $5,000,000.

Since Gelb's offenses were committed before the Sentencing Guidelines went into effect, Gelb's sentence is governed by pre-guidelines principles. Gelb appealed his conviction and we affirmed. *United States v. Gelb*, 881 F.2d 1155 (2d Cir.), *cert. denied*, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989).

By this post-conviction motion, Gelb has raised six new issues. He claims that: (1) his 13-year prison term is disproportionately severe and requires reduction; (2) a provision in the judgment violates his fifth amendment right against self-incrimination by conditioning consideration of leniency or early release on his disclosure of other alleged criminal activity; (3) the restitution award is improper; (4) the presentence report was inaccurate and deficient; (5) his tax conviction sentence should be vacated because his original sentence as well as his amended sentence were incorrectly based on a statutory amendment which had not become applicable to him; and (6) any resentencing should be conducted by a different judge.

We agree that the district judge erred as to the sentences on the tax counts and in failing to expressly consider the factors

required by 18 U.S.C. § 3664 when awarding restitution. Therefore, we remand for further proceedings for the imposition of correct sentences on the tax convictions and to reconsider the restitution award. Because we find no merit to Gelb's other arguments, we affirm the district court's order and amended judgment in all other respects.

## DISCUSSION

### A. *Motion to Reduce Sentence*

■ Gelb contends that his sentence must be reduced because it is disproportionately severe, thus violating his eighth amendment protection against cruel and unusual punishment. Before considering the merits of this argument, we first address the question of waiver raised by the government. The government contends that under 28 U.S.C. § 2255, a defendant cannot collaterally attack on an issue which he failed to raise on his direct appeal. Without delving into the intricacies of § 2255 review, we note that Gelb asks for post-conviction relief under rule 32 and former rule 35 as well as under § 2255. Although the government is correct in suggesting that § 2255 relief will rarely be granted as to matters available for review where a conviction has been upheld on appeal, we have held, in the context of a motion under former rule 35, that a criminal defendant's election not to raise sentencing issues in a prior direct appeal does not constitute a waiver. *United States v. Weichert*, 836 F.2d 769, 772 (2d Cir.1988); *United States v. Ursillo*, 786 F.2d 66, 69–71 (2d Cir.1986). Since Gelb complied with the procedural requirements of former rule 35(b), his claim has not been waived.

■ However, we do not agree that his claim has any merit. In general, "a sentence within the legal limits and not based on materially inaccurate or otherwise improper information or communications will not be set aside on an appeal." *United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir.1986). Gelb's sentence was under the statutory maximum, and he has not shown any "extraordinary" circumstances that

demonstrate a need for reducing his sentence. *See United States v. Golomb*, 754 F.2d 86, 90 (2d Cir.1985). Given the seriousness of his crimes and the extent of his fraudulent conduct, his sentence is not disproportionately severe. Thus, Gelb is not entitled to a reduction in his sentence.

### B. *Fifth Amendment Right against Self–Incrimination*

■ Gelb also challenges a provision of the judgment which he contends conditions leniency or early release on his willingness to cooperate with the government. He claims the provision violates his fifth amendment right against self-incrimination. The challenged provision states:

> It shall be a factor in any consideration of leniency as to early release or Rule 35 leniency that the defendant cooperate fully to establish all sums defrauded [sic] or embezzled, and the ultimate disposition of those funds.

Gelb claims that Judge Van Sickle offered him leniency if he would come forward with information to help determine the actual amount of the fraud. Gelb approached the government and offered to "come forward" and "disclose * * * to the fullest possible extent, the information identified by the Court." However, Gelb specified that he would disclose information only as to those issues that interested Judge Van Sickle, not those relating to alleged other criminal activity by Gelb and others. The government rejected this offer, saying that it had no interest in the financial disclosure that Judge Van Sickle had identified. The government specifically stated that Gelb would be treated no differently than any other defendant and that he would have to sign the standard cooperation agreement. No meeting ever took place between Gelb and the government about any information.

Despite the government's seemingly rigid rejection of Gelb's proffer, Gelb's claim here has no merit. Contrary to that claim, Judge Van Sickle's judgment did not condition leniency or early release on defendant's disclosure to the government of other criminal activity. Rather, it suggested only that he cooperate in establishing the amount of his unlawful gain from the extremely fraudulent activities for which he had already been convicted. *Cf. United States v. Oliveras*, 905 F.2d 623, 626–28 (2d Cir.1990) (sentence reduction for acceptance of responsibility may not be withheld for failure to admit wrongdoing beyond scope of guilty plea). Such suggested cooperation was not a condition, but simply a factor to be considered in determining leniency or early release. A district court can properly consider, as one factor in imposing sentence, the defendant's refusal to cooperate with officials investigating a criminal conspiracy in which he was a confessed participant. *Roberts v. United States*, 445 U.S. 552, 553, 100 S.Ct. 1358, 1360, 63 L.Ed.2d 622 (1980). Here, as in *Roberts*, no self-incrimination claim was asserted in the district court. In addition, the government's refusal to cooperate did not prevent Gelb from presenting information about the amount of his fraudulent gains directly to the court, fully separate from any cooperation that may have been sought by the government.

### C. *Restitution*

Judge Van Sickle, invoking 18 U.S.C. § 3663, included in the judgment a $5,000,-000 restitution award for amounts lost by the U.S. Postal Service from Gelb's fraud. Gelb challenges this restitution order on several grounds, most importantly: (1) that the court failed to differentiate between pre–1983 and post–1983 losses; (2) that the government did not adequately show that the amount of the loss was $5,000,000; and (3) that the court failed to consider the factors outlined in § 3664, including Gelb's ability to pay and the needs of his wife and two children. We consider each of these claims in turn.

■ First, Gelb argues that because the Victim and Witness Protection Act, ("VWPA"), 18 U.S.C. § 3663, became effective on January 1, 1983, the district court erred by not distinguishing between losses suffered before and those suffered after the effective date of the statute. In its brief on appeal, the government conceded

this point and agreed that a limited remand was necessary for reconsideration of the appropriate restitution. In a petition for rehearing, however, it now argues that its original position was error and that a remand is neither necessary nor correct to differentiate between the periods of losses under the circumstances of this case.

The government points to *United States v. Bortnovsky*, 879 F.2d 30 (2d Cir.1989), as controlling on this issue. We agree that we are bound by *Bortnovsky*. In that case, we held that if one of the offenses on which a defendant is convicted is a RICO count and the RICO predicate crimes span the effective date of the VWPA restitution provision, any loss sustained as a result of any of the predicate acts underlying the RICO offense, whether or not the act was committed before 1983, falls within the scope of the restitution statute. *Id.* at 42. We stated that any other ruling "would improperly treat the predicate acts, rather than the RICO counts, as the offense for which the defendants were being sentenced." *Id.*

Gelb relies on *United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986), where the third circuit acknowledged that all the defendant's offenses were part of a single scheme to defraud the postal service, but it held that a defendant could not be made to pay restitution for the particular offenses committed prior to 1983. In *Bortnovsky*, we declined to follow the reasoning of the third circuit, *Bortnovsky*, 879 F.2d at 42, but we also think that *Martin* is distinguishable here, because the defendant in that case had been convicted of 34 counts of mail fraud, not, as here, of a single RICO offense whose predicate crimes spanned the effective date of the restitution statute.

Although it may encompass a number of underlying acts, a RICO conviction is a conviction for a single offense. Consequently, restitution can be awarded for all losses arising from the offense and its component parts. Since Gelb was convicted under RICO, we agree with the government's revised position that there is no need to remand simply because the district court failed to differentiate between losses caused by predicate crimes committed before January 1, 1983, and those caused by predicates committed after that date.

■ Gelb's second argument is that the government did not prove a $5,000,000 loss by a preponderance of the evidence. Section 3664, which governs the procedure for issuing an order of restitution, imposes on the prosecution the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" and establishes a preponderance of the evidence standard.

The government insists that it adequately proved the amount of the postal service's loss. Although the government was unable to obtain records concerning the complete volume of EDP's mailings between 1975 and 1983, it did produce a single set of records from which it projected its $5,000,000 figure. These records showed that, between 1977 and 1983, an EDP subsidiary had ordered nearly 25 million copies of promotional materials, which were dispatched in individual envelopes through tampered postage meters. The government calculated the $5,000,000 amount by multiplying 25 million by the twenty-cent first class postage rate in effect at the time. Although the district court expressed some reservations about this amount, it accepted the figure because it was unrebutted, and because in light of the other evidence it was probably on the low side. We think there was a sufficient basis on this record for the district court's finding.

■ Finally, Gelb is correct in asserting that, if restitution is to be ordered under § 3663, "[a] district judge must consider all the factors listed in section 3580(a) [now section 3664] at the time of sentencing, and may in his discretion reach a compromise figure based on that consideration." *United States v. Atkinson*, 788 F.2d 900, 904 (2d Cir.1986). However, there is no requirement that specific findings be made on each factor because "such fact finding would unnecessarily encumber a sentencing proceeding". *Id.* at 902. Thus, on remand, the district judge need only "con-

sider" the listed factors, *id.*, and a statement that the district judge has considered the statutory factors is sufficient. *Id.* at 902–03.

The district court, pursuant to § 3664, should consider the financial resources of the defendant and the financial needs and earning abilities of the defendant and his dependents. However, it is possible to impose financial obligations on "a defendant who is indigent at the time of sentencing but subsequently acquires the means to discharge his obligations." *United States v. Brown*, 744 F.2d 905, 911 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). Many defendants do not have the funds to make restitution immediately. *Atkinson*, 788 F.2d at 904. If district judges did not have the discretion to "discount the importance of present indigency in performing the statutory balance", "an indigent defendant would evade the statutory purpose of making the victim whole in the event he should subsequently come into sufficient funds." *Id.*

D. *Deficiencies in the Pre–Sentencing Report*

Gelb next argues that he must be resentenced because his presentence report was inaccurate and the sentencing procedure itself was inadequate. The probation office prepared a presentence report in December of 1988 which was reviewed by Judge Van Sickle at sentencing in January of 1989. No changes were made in the presentence report; the copy of the presentence report in the Bureau of Prisons is identical to the presentence report prepared in December 1988.

The presentence report and the government's sentencing letter included more than 30 instances of other alleged "bad acts". The accusations ranged from claims that Gelb conducted "sweepstakes" operations that "were saturated with false pretenses" to assertions that he put sugar in the gas tanks of the cars of his employees. The sentencing hearings were devoted in large part to a consideration of the other "bad act" charges. Judge Van Sickle dis-

claimed that he was taking the majority of these charges into account, but he did specifically consider three of these alleged "bad acts"—a NLRB-contempt matter, alleged misstatements involving a 1983 proposal to New York City by EDP (Gelb's corporation), and an alleged failure by EDP to make unemployment tax contributions to the State of New York. On May 10, 1990, the district court ordered that a transcript of the sentencing hearings be forwarded to the Bureau of Prisons and be attached to the presentence report.

Gelb argues that the May 10th order did nothing to cure the basic problems associated with the presentence report or the sentencing. It is Gelb's position that the presentence report contained "such a welter of innuendo, rumor and invective—and was so infused with misinformation and inaccuracies—that the report profoundly skewed and distorted the sentencing process."

Gelb also contends that Judge Van Sickle did not give Gelb an adequate opportunity to controvert any of the host of claims made in the presentence report, including the three specific other "bad act" areas that Judge Van Sickle explicitly stated he had considered in formulating the sentence, as required by Fed.R.Crim.P. 32(c)(3)(D).

These claims have no merit. Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure requires the sentencing judge, when relying on disputed facts in the presentence report, to make specific findings; it also requires him to order a transcript of the sentencing proceedings to be attached to the presentence report and forwarded to the Bureau of Prisons. Judge Van Sickle complied with these requirements.

In addition, all that is required during sentencing is that "the defendant ha[ve] an effective opportunity to rebut allegations likely to affect the sentence." *United States v. Lee*, 818 F.2d 1052, 1056 (2d Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). Here, defense counsel received a copy of the presentence report several weeks before the sentencing hearing. The judge, during sentencing, reviewed each of the approxi-

mately 30 charges one-by-one and questioned both counsel as to the evidence supporting and contradicting the charges. In fact, Gelb did rebut some of the government's evidence in his presentence memorandum and at the sentencing itself. In the end, the judge made findings as to the three "bad act" charges on which he relied, and as to the others, he said that he was disregarding them. No more is required.

### E. *Resentencing on Tax Fraud Counts*

▇ Gelb was convicted on three counts, counts 74, 75, and 76, of subscribing to false corporate tax returns for EDP on July 14, 1981 for the 1980 tax year; on May 17, 1982 for the 1981 tax year; and on July 18, 1983 for the 1982 tax year. His original sentence on these counts imposed imprisonment for 5 years and a fine of $75,000 on count 74, relating to the year 1980, and probation on counts 75 and 76, relating to the years 1981 and 1982. However, at the time the count 74 offense was committed, the statute, 26 U.S.C. § 7206(1), provided for a maximum term of imprisonment of 3 years and a maximum fine of $5,000. By a later amendment, for offenses committed *after September 3, 1982,* the maximum fine was increased to $100,000. P.L. 97–248, § 329(e) (emphasis added).

In Gelb's motion, he pointed out this statutory history, concluding that it was illegal to impose on him a sentence of 5 years and $75,000 for the count 74 offense committed on July 14, 1981. Judge Van Sickle recognized his error and sought to correct it with an amended judgment that imposed a sentence of three years and $75,000 on count 75, and 5 years probation on count 74. Gelb now argues on appeal, correctly, that the amended sentence on count 75 is also illegal, because that offense, committed on May 17, 1982, also occurred before the effective date of the amendment to § 7206(1).

The government concedes the point and recognizes that a remand is necessary. But the government suggests that the sentencing court be instructed to simply amend the judgment a second time by shifting the $75,000 fine to count 76, which involved conduct after the effective date of the amendment. This, the government argues, would effectuate the manifest intent of the district court, which was to impose on Gelb for his three tax violations the maximum possible term of imprisonment for any one count together with a $75,000 fine and two concurrent terms of probation. The government contends that changing the fine, first, from count 74 to count 75, and now to count 76, does not offend due process or double jeopardy principles.

Gelb, of course, argues that the original sentence on count 76 included no fine, that the maximum fine on counts 74 and 75 was $5,000, and that any fine on the tax counts above $5,000 violates his fifth amendment rights.

We are not persuaded by Gelb's reasoning. In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court held that, in certain circumstances, increasing a sentence after the defendant has begun to serve it does not violate the constitutional guaranty against double jeopardy. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137, 101 S.Ct. at 437. "So long as a sentence can be increased on appeal, defendant has no expectation of its finality." *United States v. Rico,* 902 F.2d 1065, 1068 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990) (citing *DiFrancesco,* 449 U.S. at 134–36, 139, 101 S.Ct. at 435–37, 438).

Prior to the Supreme Court's ruling in *DiFrancesco,* the second circuit had held that "increasing a sentence after the defendant has commenced to serve it is a violation of the constitutional guaranty against double jeopardy." *United States v. Sacco,* 367 F.2d 368, 369 (2d Cir.1966). Since *DiFrancesco,* we have had several opportunities to reconsider the double jeopardy problems involved in resentencings. Basically, three distinct problems have been considered.

First, we have held that a sentencing judge could, on remand, increase the sentence on a specific count where the original sentence was imposed as part of a "package" that included a mandatory consecutive sentence which was subsequently found to be invalid. *McClain v. United States*, 676 F.2d 915, 917 (2d Cir.), *cert. denied*, 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *United States v. Diaz*, 834 F.2d 287, 290 (2d Cir.1987), *cert. denied*, 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988). Where the entire original sentence is vacated and remanded for resentencing, the sentencing judge could impose a new sentence to carry out his original intention without running afoul of the double jeopardy clause. *McClain*, 676 F.2d at 917; *Diaz*, 834 F.2d at 290.

Second, we have held that a district judge could increase a defendant's sentence where the original sentence had been erroneously entered, despite the fact that the defendant had completed serving the prison term. *Rico*, 902 F.2d at 1068. In that case, the district court was unaware that a plea agreement provided for a longer sentence when the original sentence was imposed, but the court was allowed to resentence the defendant to reflect the terms of the plea agreement.

Finally, however, this court refused to extend *McClain* or *Diaz* to allow an increase in a sentence whenever one or more sentences that were part of a "sentencing plan" were vacated. *United States v. Pisani*, 787 F.2d 71, 75 (2d Cir.1986). In that case, we had previously vacated defendant's convictions on all but one count, dismissing some counts while remanding the others for a new trial. *United States v. Pisani*, 773 F.2d 397 (2d Cir.1985). The government then argued that the district court should be given the chance to increase the modest sentence imposed on the one conviction which had been affirmed. It contended that the district court probably had imposed a lighter sentence on that count because of the harsher penalties imposed on the convictions that were vacated and thus the court should have the opportunity to resentence the defendant to reflect more closely its original intent.

We held, however, that the sentencing court is not free to resentence the defendant on the convictions that are affirmed unless the district judge erroneously believed a mandatory consecutive sentence was necessary. *Id.* at 74. Even if the court may have been more lenient in sentencing on a particular count because of the comparative severity of the sentences imposed on the other counts, now dismissed, it is not entitled to resentence the defendant.

The case now before us, though sharing some similarities, is distinguishable from these previous decisions. No mandatory consecutive sentence was involved, as in *McClain* or *Diaz*. Nor was the sentence imposed on count 76, the sentence which the government seeks to increase, erroneously imposed, as in *Rico*. Nor were any of the convictions vacated, as in *Pisani*. The question here is whether, under double jeopardy principles, we can vacate a valid sentence of probation on count 76, on which the conviction has been affirmed, and allow the sentencing judge to impose an increased sentence on that count because the sentence on another similar count was erroneously imposed, when the end result would reflect the sentencing judge's original intent.

We hold that Gelb's sentence on count 76 can be increased without offending the double jeopardy clause. The situation is similar enough to that in *Rico*, where the district court erroneously imposed a light sentence based on incorrect information, to justify a modified resentencing. Here, Judge Van Sickle erroneously believed that § 7206(1) allowed the sentence he imposed on count 75. It is clear that, for having filed the three false tax returns, the judge intended to sentence Gelb to the statutory maximum term of imprisonment and a $75,-000 fine plus 5 years of probation. There was no particular reason to select one of the three counts for the prison term and fine in preference to the others. In addition, *Pisani* does not control here because the reason for a resentencing does not stem from invalidation of the underlying conviction. Given the continuing vitality of

all three convictions and the district court's original intent, confirmed by its ineffective attempt to correct the error, the district court should now be afforded a final opportunity to settle the matter by resentencing Gelb on all three of the tax counts.

In reaching this conclusion, we are not deciding whether a sentencing judge can always increase a sentence previously imposed on one count to adjust for infirmities in a sentence imposed on another count. We find no error in this case because it is obvious that the sentencing judge, in imposing the original sentences, regarded the three tax offenses as fungible. He made no discrete assessment of the degree of wrongdoing associated with each year's tax offense. We would face a different and closer question if a judge who had determined that a particular offense merited slight punishment revised that punishment to compensate for the disallowance of a penalty imposed for wrongdoing of a different sort.

### F. *Resentencing by a Different Judge*

Finally, Gelb asks that any resentencing be conducted by a different judge. We see no reason to grant that request. *See United States v. Bradley*, 812 F.2d 774, 782 n. 9 (2d Cir.), *cert. denied*, 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987); *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (per curiam) (in banc). However, because Judge Van Sickle, who imposed the original and "corrected" sentences, was sitting in the Eastern District of New York by designation from his official station in the District of North Dakota, we leave it to the Eastern District of New York to determine, according to its own procedures and convenience, which particular judge shall conduct the resentencing.

### SUMMARY AND CONCLUSION

We affirm the district court's sentence on the racketeering and mail fraud counts since we find them not disproportionately severe. We find no violation of defendant Gelb's fifth amendment right, because the district court did not improperly condition leniency or early release on Gelb's disclo-

sure of alleged other criminal activity. Nor do we find any reason for resentencing based on defendant's argument that the presentence report was inaccurate or deficient. We also find no error in requiring restitution for the full period of the RICO offense, and the amount of ordered restitution, $5,000,000, is sufficiently supported by the record.

We do, however, vacate the restitution award and remand with a direction to the district court to expressly consider the factors required by § 3664. In addition, we vacate the tax sentences and remand for resentencing on the three tax convictions in light of the analysis and legal principles discussed in this opinion.