**UNITED STATES, Respondent,**

v.

**Namik ERDIL, Petitioner.**

**No. 00–CV–6643(ADS).**

United States District Court,
E.D. New York.

Nov. 15, 2002.

Namik Erdil, Loretto, PA, Petitioner Pro Se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, by Burton T. Ryan, Jr., Assistant United States Attorney.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Namik Erdil ("Erdil" or the "petitioner") by petition dated November 2, 2000, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government seeks dismissal of Erdil's petition.

## I. BACKGROUND

On February 19, 1999, Erdil, a citizen of Turkey, pled guilty to two counts which charged him with conspiracy to commit bank fraud, credit card fraud and laundering money, and bank fraud. During the plea allocution proceedings held on February 19, 1999, Erdil was represented by a court-appointed attorney. The Court asked Erdil whether he understood the nature of the counts in the indictment, and Erdil responded that he and his counsel discussed the plea agreement and that he understood the terms of the agreement. In addition, Erdil stated that he understood his rights and the consequences of pleading guilty. He further asserted that he was satisfied with the assistance of his attorney and that he did not need more time to discuss with his attorney the question of his guilty plea.

Erdil entered into a cooperation agreement with the Government, in which Erdil was promised a 5K1.1 letter in return for his "substantial assistance." On September 29, 1999, the Government notified Erdil that because the information he supplied to the Government did not rise to the level of "substantial assistance," it would

not move for a downward departure pursuant to U.S.S.G. § 5K1.1.

On November 5, 1999, Erdil was sentenced by this Court to 57 months imprisonment, with credit for time already served. The Court further imposed a term of five years of supervised release to commence upon his release from prison. In addition, a special assessment charge of $200 was imposed, and the Court ordered Erdil, upon release, to pay restitution in the amount of $424,722.31 to be paid at the rate of 10% of Erdil's gross monthly income until the amount of restitution is paid in full to the Clerk of the Court.

Pursuant to 28 U.S.C. § 2255, Erdil petitions this Court to vacate, set aside, or correct his sentence on the grounds that (1) his counsel was unconstitutionally ineffective in failing to (a) inform him of his rights under the consular notification provision of the Vienna Convention on Consular Relations ("Vienna Convention"), Apr. 24, 1963, art. 36, 21 U.S.T. 77, 596 U.N.T.S. 261; (b) challenge the amount of fraudulent money charged against him, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (c) challenge the indictment for money laundering pursuant to 18 U.S.C. § 1956; and (2) the Government acted in bad faith when it declined to make a 5K1.1 downward departure motion at his sentencing. Finally, Erdil argues that the Court failed to consider his ability to pay before ordering him to pay $424,722.31 in restitution. The Government seeks to dismiss all of Erdil's claims.

## II. DISCUSSION

### 1. Standard of Review

■ As stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir.1995) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). As a result, prisoners seeking habeas corpus relief pursuant to Section 2255 must show both a violation of their constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Ciak*, 59 F.3d at 301.

■ Further, in Section 2255 proceedings, the Supreme Court has recognized the rule of "procedural default: [that prisoners] cannot assert claims they failed to raise at trial or on direct appeal unless they can show 'cause' for the default and 'prejudice' resulting from it." *Id.* at 302 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)); *see also Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). The general rule is that a writ of habeas corpus is not a substitute for an appeal. "Where the petitioner—whether a state or federal prisoner—failed properly to raise his claims on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged ... violation.'" *Id.* at 354, 114 S.Ct. 2291 (citing *Wainwright*, 433 U.S. at 84, 97 S.Ct. 2497).

■ However, the traditional procedural default rule generally will not apply to ineffective assistance of counsel claims where a petitioner was represented by the same attorney at trial and on direct appeal and where such claims depend on matters outside the scope of the record of a direct appeal. *Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993). *Billy–Eko* added that, "ineffective assistance of counsel claims are appropriately brought in § 2255 petitions even if overlooked on direct appeal because resolution of such claims often requires consideration of mat-

ters outside the record on direct appeal...." *Id.* (citations omitted). Thus, ineffective assistance of counsel claims may be raised for the first time in a habeas petition. *See United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990). Therefore, while the petitioner did not raise an ineffective assistance of counsel claim on direct appeal, the Court is required to examine the merits of such a claim under Section 2255.

To establish an ineffective assistance of counsel claim, the petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, the petitioner must show that the "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. In order to show prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987) (quoting *United States v. Cruz,* 785 F.2d 399, 405 (2d Cir.1986)). The Court's determination, however, must be highly deferential to counsel as, "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. While the Court must presume that counsel's conduct was reasonable, the Court nonetheless is mindful that the petitioner is proceeding *pro se* and thus, his submissions will be liberally construed. *See Douglas v. United States,* 13 F.3d 43, 47 (2d Cir.1993).

**A. Vienna Convention**

■ Erdil argues that the Government violated Article 36 of the Vienna Convention by not advising him of his rights to notify the consular post of Turkey of his arrest, and that his attorney was unconstitutionally ineffective by not moving to dismiss the indictment on this basis. As discussed above, to prevail on a claim for ineffective assistance of counsel, Erdil must establish two elements: (1) his counsel's performance "fell below an objective standard of reasonableness"; and (2) but for the deficiency, there is "a reasonable probability" that the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As demonstrated below, Erdil establishes neither prong of this test because a violation of Article 36 of the Vienna Convention on Consular Relations is not a basis for a dismissal of an indictment. *See United States v. De La Pava,* 268 F.3d 157, 163 (2d Cir.2001).

Article 36(1)(b) of the Vienna Convention provides, among other things, that when a foreign national is arrested, "the competent authorities of the receiving State [here, the United States] shall, without delay, inform the consular post of the sending State [here, Turkey] if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner." After the consular official is notified, he or she may visit the national, help to provide legal counsel, or arrange a for a visit with the national's family. *See* Vienna Convention, art. 36(1)(c).

■ Erdil contends that if consular officials had been notified, their assistance would have helped him to better understand the laws of the United States. In particular, Erdil claims that they would have advised him to remain silent to prevent him from making inculpatory statements to federal authorities. However, "the consular-notification provision of the Vienna Convention and its related regulations do not create any 'fundamental rights' for a foreign national." *De La Pava,* 268 F.3d at 165. Thus, the Second

Circuit has announced that "the Government's failure to comply with this provision is not a basis to dismiss an indictment." *Id.* In light of this holding, Erdil cannot persuasively argue that his counsel's failure to move to dismiss the indictment under Article 36 of the Vienna Convention constitutes ineffective assistance of counsel. Accordingly, Erdil's motion to vacate, set aside, or correct his sentence on this ground is denied.

## B. Apprendi Claim

Erdil also claims that his sentence violates his 5th and 6th Amendment rights in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). According to Erdil, the rule from *Apprendi* was violated because the amount of fraudulent money he obtained was not submitted to a jury to be determined beyond a reasonable doubt. Namki further claims that counsel was ineffective by instructing him to plead to the amount of fraudulent money charged against him.

 In *Apprendi*, the Supreme Court announced that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. However, "the constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of the conviction." *United States v. Thomas*, 274 F.3d 655, 664 (2d Cir.2001). Here, Erdil was convicted of conspiracy to commit bank fraud (in violation of 18 U.S.C. § 1344), credit card fraud (in violation of 18 U.S.C. § 1029) and launder money (in violation of 18 U.S.C. 1029), and bank fraud (in violation of 18 U.S.C. § 1344). The presentence report indicated that under the Unit-

ed States Sentencing Guidelines, Erdil had a total offense level of 25 and a criminal history category of I, the guidelines sentence for which is 57–71 months imprisonment. Erdil was sentenced to 57 months imprisonment which is well below the statutory maximum of 71 months. *Apprendi* is therefore inapplicable.

 Erdil contends that his counsel was unconstitutionally ineffective by instructing him to plead to the amount of the fraudulent money charged against him; thereby causing his sentence to be enhanced. Erdil bears the burden of proving "counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052). Indeed, Erdil must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. According to the transcript of the plea allocution proceedings, this Court asked Erdil:

> Mr. Erdil, your attorney advises me you wish to plead guilty to count 1 which is conspiracy to defraud financial institutions with credit cards as set forth in the indictment and count 2 for bank fraud for knowingly and intentionally executing a scheme to defraud financial institutions with credit cards in amounts totaling $707,000. Do you understand the nature of counts 1 and 2 in the indictment or do you wish—well, do you understand the nature?

Erdil responded "yes." He further stated that a Turkish interpreter read the plea agreement to him and that every word and legal term in the agreement was explained. Erdil also informed the Court that he un-

derstood the terms of the plea agreement and that his plea was being made voluntarily. The Court asked Erdil whether he understood what the United States Sentencing Guidelines are. Although Erdil responded "yes," the Court explained it to him to ensure that Erdil sufficiently understood. Furthermore, Erdil informed the Court that he and his attorney discussed the guidelines.

The Supreme Court has held:

The representations of the defendant, his [or her] lawyer, and the prosecutor at the [original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.

*Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (citations omitted). Erdil placed on the record at the plea proceedings that he was satisfied with his attorney and fully understood his rights and the consequences of his pleas. Furthermore, Erdil does not argue that his attorney coerced or forced him into pleading guilty to the counts. Accordingly, the Court finds that his counsel's conduct was not objectively unreasonable or prejudicial.

**C. Section 1956**

According to Erdil, the Government improperly prosecuted him for money laundering pursuant to 18 U.S.C. § 1956. Erdil argues that Section 1956 was promulgated to identify narcotics trafficking. As a result, Erdil asserts that he was erroneously prosecuted under Section 1956 because there were no allegations that the financial proceeds were to finance drug trafficking. Erdil claims that by failing to challenge his indictment on this basis, counsel was unconstitutionally ineffective.

However, the Government correctly explains that the purpose of the financial proceeds under Section 1956 need not specifically relate to drug trafficking, but to any "specified unlawful activity" which is defined as "any act or activity constituting an offense listed in Section 1961(1)...." 18 U.S.C. § 1956(c)(7). Under Section 1961(1), one of the enumerated activities is Section 1344, which is a crime involving the execution of a scheme to defraud a financial institution, a crime to which Erdil pled guilty. 18 U.S.C. § 1961; 18 U.S.C. § 1344. Furthermore, "a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects." *United States v. Spada,* 331 F.2d 995, 996 (2d Cir.), *cert. denied,* 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964). Accordingly, the Court finds that counsel's conduct in this regard was not objectively unreasonable and prejudicial.

**2. Cooperation Agreement**

Erdil argues that the Government acted in bad faith and abused its discretion in refusing to offer a reduction in his sentence pursuant to U.S.S.G. § 5K1.1. In *Wade v. United States,* 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992), the Supreme Court held that even absent a cooperation agreement, defendants are entitled to assurance that the Government's refusal to file a substantial-assistance motion is not based on an unconstitutional motive. Where such an agreement exists, as in this case, defendants are entitled to a "more searching review." *United States v. Brechner,* 99 F.3d 96, 99 (2d Cir.1996) (citing *United States v. Kaye,* 65 F.3d 240, 243 (2d Cir. 1995)).

"Cooperation agreements, like plea bargains, are interpreted according to the principles of contract law." *United States v. Khan,* 920 F.2d 1100, 1105 (2d

Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). Because "there is ... an implied obligation of good faith and fair dealing in every contract, ... the prosecution's determination that it is dissatisfied with the defendant's performance under the cooperation agreement ... may not be reached dishonestly or in bad faith." *Id.* Thus, "where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith." *Id.*

In the instant case, Erdil claims that he entered into a cooperation agreement with the Government and fulfilled all of his obligations under the agreement. Erdil asserts that he was promised a 5K1.1 letter in return for his "substantial assistance." According to Erdil, he fully cooperated with the Government and that he identified all the key individuals involved. In its opposition papers, the Government explains that Erdil's cooperation agreement clearly stated that the "Government will make a motion for a downward departure under U.S.S.G. 5K1.2 on behalf of Erdil if, in the government's estimation, Erdil provided " 'substantial assistance.' " Therefore, the evaluation of Erdil's performance was in the sole discretion of the Government.

The Government contends that on September 29, 1999, Erdil was informed that based upon the information he supplied, it concluded that he did not provide "substantial assistance." The Government offers the following reasons for not affording Erdil a 5K1.1 letter: (1) Erdil "did not [provide] the Government with any useful or unique information, that is the information was already known to prosecutors at the time" and (2) Erdil "did not provide any assistance or testimony to the Govern-

ment leading to any arrest or prosecution of another individual."

While there are many factors the Government considers in deciding whether to issue a 5K1.1 letter, the Government may not refuse a Section 5K1.1 motion pursuant to a satisfaction clause in a plea agreement based upon circumstances already known to it at the time the defendant signed the agreement. *United States v. Knights,* 968 F.2d 1483, 1487–88 (2d Cir. 1992). In addition, the Government may not refuse to acknowledge Erdil's assistance because the fruits of his cooperation ultimately results in no prosecution. *See Khan,* 920 F.2d at 1105; *Knights,* 968 F.2d at 1488. The Government provides no details to dispute the veracity of Erdil's rendition of his cooperation. Furthermore, the Court has not received a copy of the cooperation agreement from the Government to determine whether Erdil fulfilled his duties under the agreement. Therefore, at this juncture, the Court finds that the reasons offered by the Government are insufficient to justify its conduct.

 Because the Court has received only Erdil's skeletal account of his assistance and the Government has not elaborated on the details of the cooperation offered, or lack thereof, the Court is unable to conclude at this time, whether the Government acted in good faith in declining to move for a downward departure. Accordingly, the Court directs the Government to expand the reasons in support of its adverse determination regarding Erdil's assistance. In this regard, the Government is directed to submit a copy of the cooperation agreement and file an affidavit with this Court which shall include, at minimum: (1) the details of Erdil's actual assistance rendered to the Government and the results of such assistance, if any; (2) the status of the investigation before and after Erdil provided his assistance; (3)

the dates the investigation began and ended; (4) whether and when any other individuals have rendered assistance of similar nature to that offered by Erdil and have been denied a 5K1.1 letter; and (5) whether any individuals entered into similar cooperation agreements and having similar results have been issued a 5K1.1 letter.

The Court notes that it expresses no opinion at this time as to the weight, if any, to be given to the 5K1.1 letter should it be issued by the Government. Furthermore, whether the Government is obligated to provide the 5K1.1 letter pursuant to the cooperation agreement and the discretionary weight to be accorded to it by the Court, are two distinct issues.

### 3. Restitution

Erdil argues that the Court failed to consider his ability to pay before ordering him to pay restitution in the amount of $424,722.31. At the outset, the Court reemphasizes that a Section 2255 motion is limited to claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Here, although Erdil does not identify the law or right he claims the Court violated when it ordered restitution, the Court construes Erdil's claim as alleging that the Court failed to follow the guidelines pursuant to Sections 3663 and 3664 of Title 18, United States Code.

Sections 3663 and 3664 permit courts to impose an order of restitution when imposing sentence for offenses under Title 18 and certain other enumerated crimes. 18 U.S.C §§ 3663, 3667. In determining whether to order restitution, the sentencing court considers "(1) the amount of the loss sustained by each victim as a result of the offense; and (2) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i).

If a court decides to award restitution, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). While the amount of restitution ordered cannot be reduced because of a defendant's financial circumstances, a court can consider those circumstances in setting a payment schedule. 18 U.S.C. § 3664(f)(3)(B).

The presentence report computed that Erdil's frauds incurred losses to credit card companies and banks in an amount totaling $2.5 million. Erdil was held accountable for losses amounting to $802,310.56, and for restitution purposes, the presentence report determined Erdil was responsible for $424,722.31. Erdil does not dispute the calculation of the restitution owed the victims of the fraud. This Court ordered Erdil, upon release from custody, to pay restitution in the amount of $424,722.31 to be paid at the rate of 10% of Erdil's gross monthly income until the amount of restitution is paid in full to the Clerk of the Court. While the Court should consider the financial resources of the defendant, "it is impossible to impose financial obligations on 'a defendant who is indigent at the time of the sentencing but subsequently acquires the means to discharge his obligations.'" *United States v. Gelb*, 944 F.2d 52, (2d Cir.1991) (quoting *United States v. Brown*, 744 F.2d 905, 911 (2d Cir.1984)). Many defendants are not financially capable of making immediate restitution. However, "if the district judges did not have the discretion to 'discount the importance of

present indigency in performing the statutory balance', 'an indigent defendant would evade the statutory purpose of making the victim whole in the event he should subsequently come into sufficient funds.' " *Id.* (quoting *United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir.1986)).

### III. CONCLUSIONS

Based on the foregoing, it is hereby

**ORDERED,** that the petition for Section 2255 relief on the basis of ineffective of counsel is **DISMISSED;** and it is further

**ORDERED,** that the decision is reserved with respect to whether the Government acted in bad faith in failing to submit a 5K1.1 letter for Erdil; and it is further

**ORDERED,** that the Government shall make such submission in conformity with this decision, within twenty days receipt of this decision; and it is further

**ORDERED,** that Erdil is directed to pay the amount of $424,722.31 in restitution on the terms set forth in the judgment of conviction in conformity with the sentence imposed by this Court on November 5, 1999.

**SO ORDERED.**